**UNITED STATES of America, Appellee,**

v.

**David P. TWOMEY,
Defendant, Appellant.**

No. 86–1108.

United States Court of Appeals,
First Circuit.

Argued Sept. 4, 1986.
Decided Dec. 18, 1986.

Harry L. Manion, III with whom Earle C. Cooley, Thomas G. Guiney and Cooley, Manion, Moore & Jones, P.C., Boston, Mass., were on brief for defendant, appellant.

Janis M. Berry, Asst. U.S. Atty., with whom Thomas J. Curley, Jr., Asst. U.S. Atty., and William F. Weld, U.S. Atty., Boston, Mass., were on brief for appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and CARTER,* District Judge.

GENE CARTER, District Judge.

Appellant, a former federal prosecutor, was convicted of four violations of federal law arising out of his sale of confidential law enforcement information to a drug smuggler whom he had investigated in the course of his official duties. He was found guilty of violating 18 U.S.C. § 371 by conspiring to subvert and impede a criminal investigation being conducted by federal agencies. He was also found guilty of conspiring to obstruct justice by revealing matters pending before federal grand juries, in violation of 18 U.S.C. §§ 371 and 1503, and he was found guilty of two

* Of the District of Maine, sitting by designation.

charges involving substantive obstructions of justice: disclosing the existence of a wire tap and the return date of a secret indictment. The appellant was acquitted on one count of bribery and one count of conspiring to aid and abet the importation of controlled substances.

The appellant was an Assistant United States Attorney from 1973 until February, 1978, and a Special Attorney with the United States Department of Justice, New England Organized Crime Strike Force, from February 6, 1978 through May 15, 1981. As a member of the strike force, the appellant participated in the investigation of Frank J. Lepere, a drug smuggler who was ultimately convicted of participating in eight separate importations of large quantities of marijuana. The government charged that the appellant sold Lepere information about the investigation, receiving in return a total of approximately $210,000 in cash and a high-speed power boat. The government alleged that the appellant disclosed the location of telephone wire taps, the nature of the evidence being provided by government witnesses, the status of ongoing grand jury investigations, and the dates of secret indictments to be returned against criminal defendants, including the precise date on which a secret indictment would be returned against Lepere. The appellant had access to such information; first, as an active member of the strike force, and, after his resignation from the strike force on May 15, 1981, as a confidante of his former colleagues still on the force. After Lepere was arrested, he became the government's chief witness against the appellant and testified that the appellant had regularly provided him with confidential information between the years 1981 and 1984. The appellant raises seven issues on appeal. We will consider each in turn.

## II.

First, the appellant argues that he should have been allowed to cross-examine government witnesses concerning evidence of Lepere's alleged involvement in two murders. One former associate of Lepere, Arnold Katz, had told the FBI that Lepere had told him that he had arranged for the murder of two individuals. Lepere has denied any such involvement and the defense has offered no evidence of involvement beyond Katz's statement.

A defendant's right to cross-examine is fundamental and demanding of great respect, *Alford v. United States*, 282 U.S. 687, 691–92, 51 S.Ct. 218, 219–20, 75 L.Ed. 624 (1931), however, a trial judge retains wide latitude to impose reasonable limits in order to avoid prejudice to a party or confusion of the issues. *Delaware v. Van Arsdall*, —— U.S. ——, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

The trial court always has the discretion to restrict cross-examination where it is likely to be more prejudicial than probative, and an unsubstantiated charge that Lepere was involved in two murders is highly prejudicial and of little probative value. The line of questioning is said to be probative on Lepere's motive to cooperate with the government. The appellant suggests that the federal government may have agreed not to share its information with state authorities and to thereby shield Lepere from prosecution for murder in return for his testimony against the appellant.[1] There is no evidence to support such a charge, and, in fact, Lepere's plea agreement explicitly states that it does not protect him from prosecution for crimes of violence. Furthermore, we are satisfied that the circumstances from which the jury could decide whether Lepere might have been inclined to testify falsely in favor of the government were adequate-

---

**1.** This amounts to a charge of serious government misconduct and it is an allegation that should not have been made without supporting evidence. During pretrial discovery, the government had agreed to turn over to the appellant records of all promises, rewards and inducements made to Lepere and other government witnesses. Nothing was produced that related to the murder allegation, and, in the absence of any contrary evidence, it must be assumed that no relevant promise, reward or inducement was made.

ly presented. *United States v. Blackwood,* 456 F.2d 526, 530 (2d Cir.1972). The jury heard a thorough cross-examination of Lepere that clearly established that the government recommended a favorable sentence for him in return for his agreement to identify and then testify against the appellant.

 In order to establish that the trial judge abused his discretion in limiting cross-examination, the defendant must show that the restrictions imposed were clearly prejudicial. *Harris v. United States,* 367 F.2d 633, 636 (1st Cir.1966). An abuse of discretion has occurred only if the jury is left without "sufficient information concerning formative events to make a 'discriminating appraisal' of a witness's motives and bias." *United States v. Campbell,* 426 F.2d 547, 550 (2d Cir.1970). Such was not the case here, and we find that the trial court's decision to exclude testimony concerning Lepere's alleged involvement in the murders was proper.

### III.

The appellant claims that it was error for the trial court to give the jury a definition of the word "lie" while he was on the stand and being cross-examined by the prosecution. Although the court's definition was given in neutral terms and came after the word "lie" had been used repeatedly in an exchange between the prosecution and the defendant,[2] the defense argues that the jury could have inferred that by giving the definition, the judge was indicating that he did not believe the defendant's testimony.

 A trial judge should be fair and impartial in his comments during a jury trial. *Crowe v. Di Manno,* 225 F.2d 652, 655 (1st Cir.1955); *United States v. Candelaria-Gonzalez,* 547 F.2d 291, 297 (5th Cir. 1977). However, a finding of partiality should be reached only "from an abiding impression left from a reading of the entire record," *Offutt v. United States,* 348 U.S. 11, 12, 75 S.Ct. 11, 12, 99 L.Ed. 11 (1954), and need not be reached on the basis of a few improper comments. *United States v. Porter,* 441 F.2d 1204, 1215 (8th Cir.1971), *cert. denied,* 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971); *see also United States v. James,* 528 F.2d 999, 1022 (5th Cir.1976).

 In this case the defense points to an isolated comment, neutral on its face, that the trial judge could easily have felt was warranted by the confusing nature of the testimony. Indeed, it is clear that the de-

---

**2.** The two exchanges below occurred a few minutes apart and were separated by about 6 pages of transcript:

Q Thomas Dwyer was a close personal friend of yours, wasn't he?
A Still is.
Q You lied to him so that you could become a partner in his firm, his partner, didn't you?
A I didn't view it at the time as a lie, really.
Q It's not a lie to tell them that the boat was borrowed? That's not a lie to you?
A I didn't view it that way as being a lie to him. It was just—where did you get the boat? I borrowed it for a while.
Q According to your testimony, as of July 10, 1982, you had a little piece of paper called a bill of sale for the boat, didn't you?
A Yes, I did.
Q So it's not a lie when you had that little piece of paper, according to your testimony, and you tell him it's borrowed? That's not a lie to you?
A I did not view it that way at that time, no.
. . . .
Q By the way, when he said to you, "Does this involve the Formula?" Did you tell him,

"Tom, they seized the Formula Sunday night"? Did you tell him that?
A No, I didn't.
Q Because he didn't ask you, right?
A We weren't discussing the Formula.
Q So you didn't tell him because he didn't ask you, right?
A We weren't discussing it.
Q You didn't tell him because he did not ask you; yes or no?
A We were not discussing the Formula. We didn't talk about it.
THE COURT: Mr. Twomey, didn't you just tell us that he asked you whether this had anything to do with the Formula in the course of that same conversation?
THE WITNESS: Later in the conversation.
THE COURT: Yes or no?
THE WITNESS: Yes.
THE COURT: All right. Incidentally, I want to explain something to the jury: For purposes of this case the definition of a "lie" is a statement of fact which is not true when made and which is known by the speaker who made the statement not to be true at the time he or she made the statement.

fendant and the government prosecutor were ascribing two different meanings to the word "lie." It is true that most jurors would be expected to know what "lie" means and that the definition might better have been omitted. However, this single comment, made in the course of a long and well-conducted trial, falls far short of reversible error, which will be found only if judicial intervention is substantial, *United States v. Robinson*, 687 F.2d 359, 361 (11th Cir.1982); *see also United States v. Smith*, 561 F.2d 8, 14 (6th Cir.1977), *cert. denied*, 434 U.S. 958, 98 S.Ct. 487, 54 L.Ed.2d 317, 434 U.S. 972, 98 S.Ct. 524, 54 L.Ed.2d 461 (1977), 434 U.S. 1019, 98 S.Ct. 741, 54 L.Ed.2d 766, 434 U.S. 1048, 98 S.Ct. 897, 54 L.Ed.2d 800 (1978), and interferes with a defendant's right to a fair trial.[3] *United States v. Billups*, 692 F.2d 320, 327 (4th Cir.1982); *see also United States v. Parodi*, 703 F.2d 768, 776 (4th Cir.1983); *United States v. Bennett*, 702 F.2d 833, 836 (9th Cir.1983); and *United States v. Price*, 623 F.2d 587, 593 (9th Cir.1980).

### IV.

■■■■ The appellant next argues that his fifth amendment due process rights were violated by the trial court's ruling that the government need release certain pieces of exculpatory evidence only twenty-four hours in advance of a witness testifying.[4] The appellant did not challenge the twenty-four-hour ruling below and therefore is precluded from raising the issue on appeal.[5] Had the issue been properly preserved, the appellant still would not have prevailed on the merits. Failure of the government to properly produce exculpatory evidence results in a constitutional error requiring reversal "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). The appellant has failed to persuade this court that the prosecution failed to turn over, or impermissibly delayed turning over, any exculpatory evidence that even remotely approaches the level of significance contemplated in *Bagley*.

### V.

■■■■ We come to the same conclusion in regard to the DEA memorandum that was provided to the defense during trial under provisions of the *Jencks* Act,[6] but which the defense claims it should have received at an earlier date under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The memorandum was referred to at trial by both sides and was submitted to the jury as a government exhibit. It was prepared by DEA agents in October 1983 as a summary of evidence suggesting that Lepere was able to obtain confidential information about their investigation. Lepere's source was at that time unknown, but the information summarized in the memorandum is of little exculpatory value.[7] We find that the government acted

---

3. The appellant's rights were further protected by the extensive instructions given to the jurors explaining to them that they were the sole judges of credibility. *See United States v. Nashawaty*, 571 F.2d 71, 76 (1st Cir.1978); *United States v. Barbato*, 471 F.2d 918, 922 (1st Cir. 1973).

4. The order was made out of concern for witness safety and did not apply to exculpatory evidence relevant to the testimony of the government's most significant witnesses. Such evidence was ordered released to the appellant several weeks before the trial began.

5. Issues not raised before the trial court will be considered on appeal only if to foreclose them would abet a gross miscarriage of justice. *Cohen v. President & Fellows of Harvard College,*

729 F.2d 59 (1st Cir.1984); *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890 (1st Cir.1979).

6. The pertinent provision of the *Jencks* Act, 18 U.S.C. § 3500, states:

 (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified....
 
 18 U.S.C. § 3500(b) (1982).

7. The exculpatory value of this memorandum is negligible. In the portion most helpful to the defense, a conversation between an associate of

properly in handling appellant's discovery requests.

## VI.

We also find no merit in the appellant's argument that the government erred in characterizing Paul Legere as "mysterious" during its closing argument. Legere was a client of the appellant who was not called by either side as a witness at trial. The appellant had received numerous phone calls at work from a man identifying himself only as "Blackie." The government claimed that "Blackie" was a code name used by Lepere and a co-conspirator when leaving messages for the appellant; the appellant claims that the Blackie calls were from Paul Legere and had nothing to do with Lepere. In closing argument, the government referred to Legere three times as "mysterious." The appellant now claims that such a characterization was intended to suggest to the jury that Legere was a "missing witness" and that the appellant would have put him on the stand if his testimony would have corroborated the appellant's. The defense cites a case from another jurisdiction, *Givens v. United States*, 385 A.2d 24, 27 (D.C. 1978), as support for the proposition that counsel may not comment on the absence of a witness without first obtaining a ruling on admissibility from the trial judge. We have not adopted such a rule in this circuit and do not now reach the issue of whether such a rule should be adopted. We conclude that the reference to Legere as "mysterious" was meant to suggest the implausibility of the conduct ascribed to him[8] by the defense and was not a comment on his failure to testify.

## VII.

The appellant next argues that he was denied his right to allocution at sentencing because remarks made by the trial judge would cause a reasonable person to question the court's impartiality. Although twice given the opportunity to speak before sentencing, the appellant chose not to take it. He claims on appeal that he would have spoken had the judge's comments at his bail revocation hearing not led him to believe that any statement he made would be disbelieved.

At his bail revocation hearing, the appellant requested that his bail not be revoked and assured the judge that he had no intention of fleeing. The court revoked bail, saying that after watching the appellant commit perjury on the stand, it could not rely on his assurances not to flee. At one point, the appellant was told: "Your testimony during this trial in my mind was rank perjury and I wouldn't take your word, Mr. Twomey, for anything after what I saw and heard during the course of the trial."

The right to allocution is an important one and judges should receive such testimony attentively and with due cognizance of the weighty responsibility of sentencing. A judge should not approach allocution in a manner that reduces it to a meaningless formality. *United States v. Sparrow*, 673 F.2d 862, 865 (5th Cir.1982).

---

Lepere and a third-party was related by the third-party to a DEA agent. In the conversation, Lepere's associate was quoted as saying that an inside agent was leaking information to Lepere. The defense claims that this is exculpatory because the appellant was not an agent of the DEA and, at the time of the conversation, was in private practice and therefore no longer an "inside" source. However, there is no evidence that Lepere's associate ever knew the source of Lepere's information. In addition, the appellant was in effect an inside source, and had been an agent of the strike force if not a DEA agent.

On the other hand, the memorandum also contained inculpatory information. In the summer of 1982, one of Lepere's attorneys told the DEA that Lepere's source was no longer in position to have access to information. In fact, the appellant was not in the government at this time. Also, in October 1983, another attorney for Lepere told the government that Lepere's source "has been out of it for a couple of years and is no longer with the government." This information also seems to point straight at the appellant.

**8.** Several witnesses testified that they had never heard anyone, including the appellant, refer to Legere as "Blackie" and that in fact when Legere telephoned, he left messages in his own name.

At the same time, judges must often make credibility assessments in the course of performing their duties, and "prejudice does not inevitably arise as a result of forming a credibility opinion." *United States v. Mirkin,* 649 F.2d 78, 82 (1st Cir.1981). It is perfectly proper and necessary for a judge to consider a defendant's credibility when deciding what weight to give his assurances that he will not flee should he be released on bail. This judge should not be faulted for his candor in discussing his decision to revoke bail. *Id.*

 We find that the appellant was not denied his right to allocution. The judge's statement that he would "not take [the appellant's] word for anything" was made in the context of a bail revocation hearing and should not be literally interpreted to mean that he would never under any circumstances believe anything that the appellant said. The judge's comments may have been strongly worded, but they arose out of appropriate concerns generated by the appellant's abuse of the public trust placed in him and by the implausibility of the testimony he gave at trial. The appellant was not denied his right of allocution, although it is true that he probably harmed his credibility by not testifying truthfully at trial. We believe that the judge would have accepted statements made by the appellant as true if they had been backed up by adequate outside support to compensate for the damage that the appellant had done to his credibility. The right to allocution does not include a right to be believed in everything one says, nor does it require the trial judge to cast off

credibility assessments that he has made during trial.

## VIII.

 Finally, the appellant claims that he was subjected to double jeopardy by being convicted on both Count I, conspiracy to defraud the United States by subverting and impeding criminal investigations being conducted by federal agencies, in violation of 18 U.S.C. § 371; and Count III, conspiracy to obstruct justice by revealing matters pending before federal grand juries, in violation of 18 U.S.C. §§ 371 and 1503. The Supreme Court has said that in determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

We conclude that the appellant was convicted of two separate offenses. Section 371 requires proof of a conspiracy to defraud the United States or one of its agencies.[9] Actions brought under this provision have involved efforts to defraud agencies of the government, such as the Internal Revenue Service,[10] the Small Business Administration,[11] and the Department of Health, Education, and Welfare.[12] Section 1503 focuses on compromising the activities of a grand jury.[13] The appellant violated

---

**9.** The pertinent portion of § 371 reads:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
> 18 U.S.C. § 371 (1982).

**10.** *See United States v. Olgin,* 745 F.2d 263 (3d Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985); *United States v. Sans,* 731 F.2d 1521, *reh'g denied,* 738 F.2d 451

(11th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985).

**11.** *See United States v. Booty,* 621 F.2d 1291, *reh'g denied and modified on other grounds,* 627 F.2d 762 (5th Cir.1980); *United States v. Swarek,* 656 F.2d 331 (8th Cir.), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981).

**12.** *United States v. Aloi,* 449 F.Supp. 698 (E.D.N.Y.1977).

**13.** Section 1503 reads:

> Whoever corruptly, or by threats or force, or by any threatening letter or communica-

section 371 when he sold confidential law enforcement information and thereby compromised criminal investigations being conducted by government agencies; he violated section 1503 when he sold information pertaining to confidential grand jury deliberations. The two offenses are distinct.

Accordingly, we *affirm* the judgment of the district court.

tion, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
18 U.S.C. § 1503 (1982).