USCA1 Opinion

 

 February 12, 1993 UNITED STATES COURT OF APPEALS For The First Circuit ____________________ No. 92-1858 UNITED STATES OF AMERICA, Appellee, v. OLGIVIE O'BRIEN WILLIAMS, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. John J. McNaught, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ James L. Sultan for appellant. _______________ Robert L. Ullmann, First Assistant U.S. Attorney, with whom A. __________________ __ John Pappalardo, United States Attorney, was on brief for appellee. _______________ ____________________ February 12, 1993 ____________________ COFFIN, Senior Circuit Judge. Defendant Olgivie O'Brien ______________________________ Williams appeals his conviction on charges of conspiracy to possess cocaine with intent to distribute, possessing cocaine with intent to distribute, and using or carrying a firearm in a drug trafficking crime. We affirm. I. We begin with a brief synopsis of the facts, taken in the light most supportive of the verdict, United States v. Karas, 950 _____________ _____ F.2d 31, 35 (1st Cir. 1991), and the prior proceedings. From December 1986 to April 1987, Williams and eleven co- conspirators participated in a cocaine distribution scheme in Boston. They operated a packaging center and retail outlets in three apartments. On March 5, 1987, at the Westmore Street outlet, the conspirators caught Herbert Beeche, a tenant in the building, spying on them as they were weighing cocaine and tallying their profits. That night, Beeche was summoned to the conspirators' apartment. Williams accused Beeche of being an informer and threatened to kill him. Williams and a co- conspirator bound and gagged Beeche and placed him in the bathtub. Williams then shot Beeche in the thigh. Later that month, the Boston police executed search warrants at two of the conspirators' outlets. The searches uncovered a small quantity of cocaine, drug paraphernalia, firearms, and ammunition. Eight of the conspirators ultimately were arrested. Williams and six co-conspirators were tried jointly in 1988.1 At trial, the government presented the testimony of Beeche and Lisa Gray, a girlfriend of one of the co-defendants during part of the conspiracy. Both witnesses testified about the drug preparation and transactions they had witnessed at the various outlets and stated that they had seen many of the conspirators, including Williams, routinely carrying and displaying firearms during these transactions. The jury convicted Williams on all three counts against him.2 Williams raises two claims on appeal: that testimony at trial was admitted improperly against him and that the district court improperly limited his cross examination of Gray. We discuss each issue in turn. II. Williams contends that the district court permitted the jury to hear evidence from Gray of past conduct that should have been ____________________ 1 One of the six co-defendants received a severance during trial and later pleaded guilty to the one count against him. All five of the remaining co-defendants also were convicted, and four of them appealed. This court affirmed their convictions in United States v. Walters, 904 F.2d 765 (1st Cir. 1990). Williams _____________ _______ raises issues on appeal that were not advanced in Walters. _______ Another conspirator, who was tried separately, also was convicted and had his conviction affirmed. United States v. Green, 887 _____________ _____ F.2d 25 (1st Cir. 1989). 2 Williams's trial counsel indicated at sentencing that he would file a notice of appeal but did not. In 1991, Williams filed a habeas corpus petition in district court, seeking, in ______ ______ effect, the right to appeal his conviction. On June 11, 1992, Williams's prior judgment was vacated and his original sentence re-imposed. Williams's new counsel then filed a timely notice of appeal. -3- excluded under Fed. R. Evid. 404(b).3 Gray testified that, in December 1986, Williams had told her that "he had killed a couple of people." Tr. Vol. III at 66. Following a lengthy sidebar conference, the district court admitted the evidence without explanation. Williams argues that the sole purpose of Gray's testimony, especially in light of its repetition to the jury, id. __ at 107, was to demonstrate that he had a bad character which made him more likely to commit the drug-related offenses charged in the indictment. This court has adopted a two-part test to analyze Rule 404(b) evidence. United States v. Nickens, 955 F.2d 112, 123-24 _____________ _______ (1st Cir. 1992); United States v. Oppon, 863 F.2d 141, 146 (1st _____________ _____ Cir. 1988). First, the district court must determine whether the evidence has any "special relevance" to a material issue, such as motive, intent, or plan. Nickens, 955 F.2d at 123. If so, it _______ must determine, pursuant to Fed. R. Evid. 403,4 whether the ____________________ 3 Rule 404(b) provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. 4 Rule 403 provides: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. -4- probative value of the evidence outweighs the risk of unfair prejudice. Id. at 124. We review the district court's decision __ to admit the evidence for abuse of discretion. Karas, 950 F.2d _____ at 36; Walters, 904 F.2d at 768. Having done so, we agree with _______ Williams that the evidence was admitted improperly. At trial, the government virtually admitted that it offered the statement for its value as evidence of criminal propensity. During the sidebar conference, the government argued that the statement was relevant because Williams and a co-conspirator "talk about how bad they are. How tough they are." Tr. Vol. III. at 70. In essence, the government offered the evidence so that the jury would infer that, because Williams was or claimed to be a murderer, he was more likely than not also to be a cocaine trafficker who uses guns in his business. The use of "other acts" evidence to demonstrate criminal propensity is specifically forbidden by Rule 404(b). Accordingly, the district court erred in admitting the statement. On appeal, the government characterizes the evidence of Williams's prior wrongdoing as evidence of his plan to establish and operate a cocaine distribution business by means of his modus _____ operandi of intimidation. Gray earlier had testified that ________ Williams unsuccessfully had offered her mother double rent for an apartment located near the Westmore Street outlet. The government claims that Williams's revelation that he was a murderer is admissible under Rule 404(b) to illustrate his use of -5- both "carrot" and "stick" to locate an apartment from which to sell cocaine. Neither the law nor the record supports the government's argument. Evidence of modus operandi is admissible under Rule _____ ________ 404(b) to prove identity, see generally 22 C.A. Wright, A.R. ___ _________ Miller, & E.H. Cooper, Federal Practice and Procedure ("Wright & ______________________________ Miller") 5246, at 512-13 (1978), but identity is not disputed in this case.5 Moreover, at trial, the government made no effort to link the "carrot" and the alleged plan to the "stick." The manner in which the government conducted Gray's direct examination manifests the disjunction between the attempt to rent an apartment from her mother and Williams's statement to Gray. After eliciting testimony regarding the failed attempt, the government switched to a line of questions regarding the Nelson Street outlet. It next solicited the in-court identification of two co-conspirators. Only then did it begin the exploration of Williams's and some of the other conspirators' backgrounds, which produced the other-acts evidence. Having introduced the challenged statement, the government did not connect it to the attempt to rent an apartment. Nor did it suggest that Williams had made the statement to intimidate Gray or her mother or that ____________________ 5 Even were identity disputed, the government's position is untenable. For conduct to be characterized as a modus operandi, _____ ________ it generally must be "`so unusual and distinctive as to be like a signature.'" 22 Wright & Miller at 513 (quoting C.T. McCormick, Evidence 190, at 449 (1972)). On this record, neither ________ Williams's boast of committing or actual commission of murder is so distinctive a device as to prove his identity as the drug trafficker in this case. -6- Gray's mother even knew of the statement. Indeed, the government did not place the evidence into any context, other than temporal, related to the development or operation of the drug conspiracy. The finding of error does not, however, conclude our inquiry. We still must determine whether the error was harmless. Karas, 950 F.2d at 37-38. We hold that it was. Having reviewed _____ the entire record and considered the probable impact of the error on the minds of the jurors, we conclude "`with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the [jurors'] judgment was not substantially swayed by the error.'" United States v. Burke, 948 _____________ _____ F.2d 23, 27 (1st Cir. 1991) (quoting United States v. Mazza, 792 _____________ _____ F.2d 1210, 1216-17 (1st Cir. 1986) (quoting Kotteakos v. United _________ ______ States, 328 U.S. 750, 765 (1946))). ______ Williams's possible status as a murderer was offered to the jury through other properly admitted evidence. Beeche testified without objection that he, too, knew that Williams claimed to be a murderer. Gray testified that she had overheard Williams threatening to kill a co-conspirator when money from cocaine sales began to come up short. Under the circumstances, we conclude that the admission of Williams's statement to Gray had little prejudicial impact on the jury's judgment. Furthermore, the record contains ample evidence to prove Williams's involvement in a drug conspiracy and use of a firearm in connection with it. Beeche testified that Williams shot him in the thigh for being an informer. Gray testified that Williams -7- was responsible for delivering cocaine to the retail outlets and collecting the proceeds. Both Gray and Beeche testified that Williams routinely was armed while cocaine was being packaged and sold. A videotape portrayed Williams brandishing a gun while a co-conspirator counted money on a kitchen counter bearing cocaine. In light of this evidence, we think it extremely unlikely that the improperly admitted evidence swayed the jury. See Mazza, 792 F.2d at 1221 (fair assurance standard satisfied if ___ _____ it is highly probable that the challenged action did not affect the judgment). Because we find the admission of this evidence to be harmless, we do not reach the question of whether the court committed an abuse of discretion in admitting the evidence under Rule 403. Karas, 950 F.2d at 38; United States v. Hernandez- _____ ______________ __________ Bermudez, 857 F.2d 50, 54 (1st Cir. 1988). Nor is it necessary ________ to review the court's failure to issue a limiting instruction, especially where trial counsel did not request one. See United ___ ______ States v. De La Cruz, 902 F.2d 121, 124 (1st Cir. 1990) (stating ______ __________ general rule that failure of trial court sua sponte to issue ___ ______ limiting instruction is not reversible error). Our finding of harmless error does not lessen our continuing conviction that the government and the courts must exercise great caution in handling evidence of other bad acts. Williams's statement was unrelated to the offenses charged and was highly inflammatory. To infect and jeopardize a prosecution with such evidence is unwise and unjustifiable. It comes with ill grace to -8- introduce marginally justifiable evidence and then to defend its use by arguing that there was so much evidence of guilt that any error would be harmless. Courts, in turn, should remain vigilant to whether other-acts evidence serves a genuinely probative purpose that substantially outweighs the risk of unfair prejudice.6 Hernandez-Bermudez, 857 F.2d at 54. At a minimum, __________________ courts routinely may wish to issue an instruction limiting the use of Rule 404(b) evidence, Oppon, 863 F.2d at 147, or to _____ ascertain whether defense counsel desires one. III. Defendant also contends that the district court erred in limiting his cross examination of Gray. Defendant sought to inquire into Gray's knowledge regarding the preparation and use of cocaine and her brother's alleged cocaine dealing to demonstrate that she was induced to cooperate with the government to protect herself or her brother. The Sixth Amendment to the Constitution guarantees a criminal defendant the right to confront the witnesses against him. An essential component of this right is the defendant's prerogative to establish the biases, prejudices, or ulterior motives of these witnesses through cross examination. Davis v. _____ Alaska, 415 U.S. 308, 315-17 (1974); United States v. Kepreos, ______ _____________ _______ ____________________ 6 We recognize, however, that express findings regarding the challenged evidence are not necessary so long as the record indicates that the district court did weigh the balance between the probative value and the prejudicial effect. See United ___ ______ States v. Santagata, 924 F.2d 391, 394 (1st Cir. 1991) (citing De ______ _________ __ La Cruz, 902 F.2d at 123 n.1). _______ -9- 759 F.2d 961, 965 (1st Cir. 1985). The trial court, therefore, must permit sufficient cross examination to enable the jury "`to make a discriminating appraisal of the possible biases and motivations of the witness.'" Niziolek v. Ashe, 694 F.2d 282, ________ ____ 289 (1st Cir. 1982) (quoting United States v. Tracey, 675 F.2d _____________ ______ 433, 437 (1st Cir. 1982)). So long as it satisfies this standard, the district court retains wide discretion to impose reasonable limits to avoid prejudice, confusion of the issues, harassment, repetition, and inquiry into marginally relevant issues. Delaware v. Van ________ ___ Arsdall, 475 U.S. 673, 679 (1986); United States v. Twomey, 806 _______ _____________ ______ F.2d 1136, 1139 (1st Cir. 1986). "If the jury has sufficient evidence before it bearing on the witness'[s] bias, the court need not permit unending excursions into each and every matter touching upon veracity." Kepreos, 759 F.2d at 965 (citation _______ omitted). To establish that the district court has abused its discretion, the defendant must show that the limitations imposed were clearly prejudicial. Twomey, 806 F.2d at 1140. Williams ______ has not carried this burden. We, therefore, find that the decision to exclude certain testimony fell within the court's discretion. The district court allowed all defense counsel, including Williams's, ample opportunity to undermine Gray's credibility by probing her bias and motive for testifying. See generally Tr. ___ _________ Vol IV at 30-158. The court did not preclude any defendant from -10- exploring Gray's involvement with the cocaine trade but barred only a few questions of marginal relevance. Its decisions did not harm defendant because the relevant information reached the jury through the interrogation by his and the other defense counsel. The intensive cross examination thoroughly delved into Gray's unsavory connection with narcotics. It exposed her cocaine use, her sale of marijuana, her knowledge of cocaine trafficking, and her involvement with and knowledge of her brother's drug trafficking. Gray admitted that she had been arrested in December 1987 at her mother's house for possession of cocaine, that a search of the house uncovered cocaine, marijuana, drug paraphernalia, and a gun, and that the charges resulting from this arrest subsequently were dismissed. She also admitted that she was testifying under immunity from the government. Gray's cross examination thus provided an extensive "record from which to argue why [she] might have been biased or otherwise ___ lacked that degree of impartiality expected of a witness at trial." Davis, 415 U.S. at 318 (emphasis in original). From _____ this record, various defense counsel, including Williams's, argued plausibly that Gray was implicated in a cocaine trafficking ring and that her cooperation with the government stemmed from her desire to protect herself from prosecution and to divert police attention from that drug ring. The jury had more than enough information to appraise Gray's credibility. Accordingly, we find that the exclusion of certain -11- questions about Gray's familiarity with cocaine and with her brother's drug trade was not an abuse of the court's discretion. Affirmed. ________ Concurrence follows. -12- TORRUELLA, Circuit Judge (Concurring). I agree with the _____________ analysis and result of this case. I write separately simply to express my exasperation at the repeated abuse of Rule 404(b) by government prosecutors. -13-