99 F.3d 1140
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert J. MURILLO, Defendant-Appellant.
 No. 95-1684.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1996.
 
 Before: NELSON, MOORE, and COLE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Defendant-appellant Robert J. Murillo appeals his convictions and sentence, claiming that the trial court erred in admitting hearsay evidence and in calculating his sentence. For the reasons below, we affirm Murillo's convictions on charges of possession of marijuana with intent to distribute and of conspiracy to distribute cocaine. However, we vacate his conviction of using a firearm during a drug trafficking crime and remand this case to the district court for resentencing.
 
 I. BACKGROUND
 
 2
 In late 1993, FBI agents and Michigan state police officers executed search warrants on Murillo's home, a separate apartment which he kept, and the homes of his associates Steven Sanchez and Robert Lopez. In Murillo's home and apartment the officers discovered marijuana, over $8,000 in cash, a scale, pagers and cellular phones, cocaine powder, two bottles of inositol (a white, sweet, crystalline solid often used to "cut" cocaine), and items used to chop and press cocaine. The officers also found a 9mm pistol, registered to a Raymond Asuan and with Asuan's fingerprints on it, in a kitchen cupboard at the apartment. During the search, Murillo told the officers that he sold cocaine, that he had rented an apartment for his cocaine suppliers to use when they came to town, and that he was awaiting a shipment of the drug.
 
 
 3
 A federal grand jury indicted Murillo on three charges: conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). During a two-day jury trial, eleven witnesses testified against Murillo. Two witnesses, Steven Sanchez and Jose Galaviz, testified that Murillo had supplied them with cocaine for resale. Several police officers testified about the results of their investigations of Murillo, noting that he had run up cellular phone and car rental bills that far exceeded the income which Murillo and his wife reported on their tax returns. An Avis employee testified that one of the cars Murillo rented had contained marijuana and cocaine when it was returned for cleaning.
 
 
 4
 Murillo's wife testified that the inositol was being used as a dietary supplement for their children, and that she and Murillo were saving the cash found in the house to buy furniture. Mrs. Murillo further testified that she and her husband separated from time to time, and that during those times her husband would stay at the apartment he had rented.
 
 
 5
 The jury found Murillo guilty on all three counts. The court sentenced Murillo to concurrent 235-month terms on the conspiracy and marijuana charges, and a mandatory consecutive term of sixty months on the firearm charge.
 
 II. CONVICTION UNDER 18 U.S.C. § 924(c)(1)
 
 6
 Murillo first argues, and the government concedes, that his conviction for using a firearm during a drug trafficking crime must be reversed in light of the Supreme Court's decision in Bailey v. United States, --- U.S. ----, 116 S.Ct. 501 (1995). We agree. The pistol at issue was located in an unoccupied apartment, in a cabinet separate from the drugs and drug paraphernalia found in that apartment. Moreover, the gun was registered to another person and had that person's fingerprints on it, but not Murillo's. Finally, there was no testimony linking Murillo to the gun. In short, there was no evidence of "active employment" of the gun, and the conviction cannot stand. Id. at 509.
 
 
 7
 The government asks that this case be remanded for sentencing to allow the district court to determine whether a two-level enhancement is appropriate under U.S. Sentencing Commission, Guidelines Manual § 2D1.1(b)(1) (possession of a dangerous weapon during certain drug offenses) [hereinafter U.S.S.G.]. Under United States v. Tucker, 90 F.3d 1135, 1143-44 (6th Cir.1996), that is the proper disposition.
 
 III. OFFICER MAINPRIZE'S TESTIMONY
 
 8
 At trial, Michigan state police officer Richard Mainprize testified that Steven Sanchez had told him that he had on occasion purchased cocaine from Murillo. This testimony was excludable as hearsay. The government's argument that it was admissible under FED.R.EVID. 801(d)(1)(B) "to rebut an express or implied charge against the declarant of recent fabrication" fails, for the simple reason that there was no predicate charge of fabrication. United States v. Smith, 746 F.2d 1183, 1185 (6th Cir.1984). Although the government suggested that the defendant's opening statements had implicitly attacked Sanchez's credibility, J.A. at 327-28, there was never any suggestion that Officer Mainprize, the declarant, had recently fabricated anything, and thus no reason to apply Rule 801(d)(1)(B).
 
 
 9
 The defendant did not object to this hearsay until essentially the conclusion of the testimony. At that time the district judge sustained the objection. After excusing the jury, the court evaluated whether to instruct the jury to disregard the hearsay testimony and concluded that on balance it was preferable to do nothing further. The district judge asked defense counsel whether he wished to comment, and counsel declined to do so. J.A. at 324-32. We conclude that the district judge acted properly. An instruction to the jury to disregard the hearsay might have highlighted the testimony, and the defense failed to object in any way to this resolution.
 
 
 10
 In any event, introduction of the testimony was harmless. Officer Mainprize's testimony regarding Sanchez's statements did nothing more than repeat what Sanchez had already told the jury. Mr. Sanchez testified that he had bought cocaine from Murillo five or six times, each time purchasing quarter- or half-ounces. Id. at 282. Mainprize testified that Sanchez had admitted buying one-half ounce of cocaine from Murillo a few days before he was arrested and also purchasing cocaine from Murillo "a few ounces at a time" for approximately eight months. Id. at 323. The only discrepancy between the accounts is in the amount of cocaine, which is irrelevant to the question of Murillo's guilt. Murillo's counsel never suggested, either during cross examination or in his closing argument, that Sanchez's testimony was false. Thus, the hearsay testimony was merely cumulative, and its introduction was harmless under FED.R.CRIM.P. 52(a).
 
 IV. GALAVIZ'S TESTIMONY
 
 11
 Jose Galaviz testified at trial that Murillo had told him that he had shot a man whom he suspected of breaking into his house and stealing nine ounces of cocaine.[1] J.A. at 367. The shooting apparently occurred sometime during the spring of 1993. Supp.J.A. at 19 p 26 and p. 23. Murillo argues that this testimony should have been excluded as inadmissible evidence of other crimes and as unfairly prejudicial, under FED.R.EVID. 404(b)[2] and 403, respectively.
 
 
 12
 Under Rule 404(b), a court may admit evidence of a defendant's prior bad acts or crimes only if the evidence is probative of a relevant fact other than the defendant's 'character' or 'propensity' to commit bad acts. United States v. Clemis, 11 F.3d 597, 600 (6th Cir.1993), cert. denied, 114 S.Ct. 1858 (1994). See Huddleston v. United States, 485 U.S. 681, 686 (1988) ("The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."). We have "construed the relevancy requirement to exact a showing by the proponent of the other crimes evidence that the tendered evidence relates to a matter that is 'in issue' in the case on trial." United States v. Bakke, 942 F.2d 977, 982 (6th Cir.1991), cert. denied, 114 S.Ct. 2114 (1994). See United States v. Zelinka, 862 F.2d 92, 99 (6th Cir.1988) (holding that district court erred by admitting similar-acts evidence "without requiring the prosecutor to show its relevance and the necessity for its admission") (citation omitted). We "review de novo whether the district court correctly determined that the evidence was admissible for a legitimate purpose." United States v. Comer, --- F.3d ----, 1996 WL 476269 at * 4 (6th Cir. Aug. 23, 1996) (citing United States v. Gessa, 971 F.2d 1257, 1261-62 (6th Cir.1992) (en banc)).[3]
 
 
 13
 The government, asking the district court to admit the statement, stated that
 
 
 14
 the indication [is] he shot the person in retaliation[.] I think when there's a gun charge and a denial that he had--that he, you know, used guns or anything like that, I think that's the essence of the denial on Count 2, that's evidence from his own mouth of a contrary situation.[4]
 
 
 15
 J.A. at 355. The government never suggested that the shooting was done in furtherance of the conspiracy, or involved any members of the conspiracy apart from Murillo himself. The court responded by noting,
 
 
 16
 It seems to me it is relevant because there is a gun charge here concerning which the government is required to prove beyond a reasonable doubt that the firearm was used during and in relation to a drug trafficking crime. This evidence certainly bears directly upon the defendant's state of mind and the use of any firearm that might have been possessed or in the grasp of the defendant.
 
 
 17
 Id. at 356. The court went on after a recess to find that the evidence was, first,
 
 
 18
 relevant to the issues that are before this court and which must be decided by the jury. Secondly, the court [found] that the testimony is not only relevant but that it has substantial probative value in regard, particularly, to the charge against the defendant using a firearm during and in relation to a drug trafficking offense.
 
 
 19
 Id. at 365. Finally, the court found the potential prejudice did not outweigh the probative effect. Id. It is thus clear that the government's and the district court's rationale for admitting the evidence was that it was relevant to the weapons count, not to the conspiracy count.
 
 
 20
 Admitting the statement under this theory was an error. Count Two of the superseding indictment charges Murillo with using a firearm on or about November 18, 1993. Evidence that he had used a gun in the spring of that year, also in connection with drug trafficking, is probative of nothing but character or propensity. The district court's vague statement that the "evidence bears directly upon the defendant's state of mind" serves only to reinforce this conclusion: the most plausible interpretation of this statement is that, since the defendant used a gun to defend his drugs before, he probably intended to do the same several months later. See United States v. Ring, 513 F.2d 1001, 1007 (6th Cir.1975) ("intent" exception does not apply where the "requisite criminal intent would normally be inferred from the criminal act" and "the defendant has not asserted the defense of an innocent state of mind") ( quoted in United States v. Johnson, 27 F.3d 1186, 1191 (6th Cir.1994), cert. denied, 115 S.Ct. 910 (1995)). It is precisely this use of prior acts evidence which Rule 404 expressly forbids.
 
 
 21
 The government argues on appeal that the evidence at issue "could well lead a reasonable person to believe that Murillo was a cocaine dealer who took care of business and would discipline anyone who would frustrate his pursuit of that trade.... The evidence was relevant and probative of Murillo's involvement in the charged conspiracy." Appellee's Br. at 20. The evidence may well have been relevant and probative: a reasonable person might conclude that a person who would shoot a man for stealing his drugs would have few qualms about using similarly unsavory methods to protect his business. The drafters of Rule 404, and the common law judges who preceded them, however, have forbidden this line of reasoning. See Kenneth S. Broun, MCCORMICK ON EVIDENCE, § 190 at 797-98 (evidence of other acts which suggests that defendant's character is bad must be excluded despite relevance and probativeness) (citing pre- and post-rules cases).
 
 
 22
 Rule 404(b) does allow the admission of bad-acts evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED.R.EVID. 404(b). The government, however, has never indicated that the evidence was offered to prove any of thse issues, or any other specific element of the conspiracy charge. See J.A. at 355-57, 364-66; Appellee's Br. at 19-20. Nor has the government ever argued that any of these issues were relevant to the gun charge. When the government does not offer a specific reason to admit other-acts evidence, the evidence must be excluded. Zelinka, 862 F.2d at 99 (where government did not specify which 404(b) exception applied, court of appeals will not "infer an argument for admissibility").
 
 
 23
 The First Circuit's opinion in United States v. Williams, 985 F.2d 634 (1st Cir.1993), is instructive on this issue. Williams, like Murillo, stood accused of conspiring to distribute cocaine and of using a gun during the conspiracy. At trial, the government elicited testimony that Williams had claimed to have "killed a couple of people," arguing on appeal that the testimony was "evidence of his plan to establish and operate a cocaine distribution business by means of his modus operandi of intimidation." Id. at 637. It then tried to fit this into the language of the rule, nothing that modus operandi is often relevant to showing identity, one of the 404(b) exceptions. Id. The First Circuit found this argument disingenuous, writing that "[i]n essence, the government offered the evidence so they the jury would infer that, because Williams was or claimed to be a murderer, he was more likely than not also to be a cocaine trafficker who uses guns in his business.' Id. The case at bar is similar: here, too, the government failed to "place the evidence into any context, other than temporal, related to the development or operation of the drug conspiracy," and the evidence should not have been admitted. Id. at 638.
 
 
 24
 That the trial court erred does not, however, mean that Murillo is entitled to a new trial. The error was harmless. As the district court noted, the testimony was neither gruesome nor detailed, and there was no suggestion that the victim died; the witness did not even know whether the shooting had actually taken place. Furthermore, there was ample evidence both of Murillo's use of guns and his guilt of the drug charges. As the district court noted, the evidence was "massive," the case was "not a close call for the jury." J.A. at 616. Thus, we can say "with fair assurance" that, had the improper other-acts evidence been excluded, the jury would have returned the same verdict. United States v. Heater, 63 F.3d 311, 325 (4th Cir.1995).
 
 V. THE PERJURY ENHANCEMENT
 
 25
 The district court increased Murillo's base offense level by two levels for obstruction of justice, pursuant to U.S.S.G. § 3C1.1,[5] on the grounds that Murillo perjured himself by giving testimony during his suppression hearing which contradicted statements in his affidavits in support of the motions to suppress. Murillo argues that the district court's findings on this enhancement were inadequate and that the allegedly perjured statements were not necessarily inconsistent.
 
 
 26
 The Supreme Court, discussing enhancements under § 3C1.1, has stated that a "witness testifying under oath or affirmation [commits perjury] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). Although "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding[,] [t]he district court's determination that enhancement is required is sufficient ... [if] the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Id. at 95. This court reviews for clear error the district court's factual findings supporting its application of a § 3C1.1 enhancement. United States v. Zajac, 62 F.3d 145, 148 (6th Cir.), cert. denied, 116 S.Ct. 681 (1995).
 
 
 27
 The trial court announced its findings as to Murillo's perjury as follows:
 
 
 28
 the court has already found, as suggested by the probation officer, the defendant swore in at least two affidavits through information he had himself contradicted in later testimony, the defendant's statements either under oath in affidavit or under oath in court, are, in the court's opinion, utterly unreliable....
 
 
 29
 I do so find here with respect to the particularized matters that were noted in the presentence report the defendant did, in fact, provide testimony which must be called perjurous [sic] since it was on point, it was material, it was relevant to the issues that were under discussion at that time. It was under oath and it was given in an attempt to, in some way, mislead the court.
 
 
 30
 J.A. at 604-06. The presentence report in turn notes four instances of supposed perjury. First, in a sworn affidavit dated September 9, 1994, Murillo stated that he was never informed of any Miranda warnings of rights. However on October 13, 1994 he testified that the signature on the waiver of rights form was his. Second, the government exhibited a written statement, allegedly made by Murillo to federal agents, dated November 18, 1993. In his September 9 affidavit, Murillo denied making any such statement; during the suppression hearing, he admitted that he had told the agents some of what was in the written statement. Third, in a second sworn affidavit, also dated September 9, 1994, Murillo claimed never to have sold any illegal drugs between 1980 and 1993. In his October 13 testimony, however, he admitted selling drugs "at some point in the past." Fourth, in the second September 9 affidavit, Murillo claimed never to have possessed any scales which have weighed any cocaine. In his October 13 testimony, he acknowledged owning a scale which he used to weigh drugs for his personal use. Supp.J.A. at 24.
 
 
 31
 The third of these instances does not, on its face, appear to be a necessary contradiction: that Murillo was careful in his affidavit to deny dealing drugs only since 1980 could be a tacit admission that he did do so before that year. Thus, his testimony that he sold drugs some time in the past does not necessarily contradict this affidavit. After examining the record, however, we cannot conclude that the district court's finding that the other three self-contradictions were intentional attempts to mislead the court is clearly erroneous.[6]
 
 
 32
 A slightly more difficult issue is whether the district court's findings as to the materiality of the false statements was adequate. We have stated in similar cases that a district "judge must, at least briefly, explain why the intentional perjury was material." United States v. Spears, 49 F.3d 1136, 1143-44 (6th Cir.1995) (overturning enhancement for obstruction of justice where district "judge did not identify with specificity the portions of [defendant's] testimony that he found to be intentional lies, or address their materiality"). However, we have also upheld § 3C1.1(b) enhancements where the trial court simply made clear what statements it found to be intentionally false and stated that they were material. United States v. Ledezma, 26 F.3d 636, 644 (6th Cir.), cert. denied, 115 S.Ct. 349 (1994); United States v. Clark, 982 F.2d 965, 969-70 (6th Cir.1993). See also United States v. Dunnigan, 507 U.S. 87, 94 (1993).
 
 
 33
 Here, it is obvious from the record that the false statements were material. For example, Murillo argued at his suppression hearing that his post-arrest statements should be excluded because they were made in violation of his Fifth Amendment rights to remain silent. See J.A. at 175. Murillo's claim that he never made any statement to the arresting officers, and that he was never informed of his Miranda rights, was obviously material to whether the statements should be suppressed. See id. at 176-77 (court denying motion to suppress in part because of contradictions between defendant's affidavits and testimony). The post-arrest statements were used at trial. J.A. at 245-50. Similarly, Murillo's false statement that he had never used his scales to weigh illegal drugs was certainly material to the issue of his guilt on the drug charges, particularly when large portions of the trial were spent describing the scales and other drug-trafficking paraphernalia. See, e.g., id. at 249, 411 (use of scales); id. at 256-63, 407-418 (use of drug paraphernalia in general). Thus, although we repeat Dunnigan 's preference for greater specificity, we hold that the finding of materiality in this case met the minimum threshold this court has established.
 
 VI. DRUG QUANTITY CALCULATION
 
 34
 Murillo argues that the district court used unreliable evidence in its drug quantity calculations. The court included five kilograms of cocaine based solely on an out-of-court statement by Michael Cruz that during the summer of 1993 Murillo had mentioned having received a five-kilogram shipment of cocaine.[7] Murillo claims that this evidence increased his sentence range under the guidelines from 151-158 months to 235-293 months.
 
 
 35
 As this court has noted in the past, Murillo faces a difficult burden: factual findings used for criminal sentencing need only be supported by a preponderance of the evidence and must be accepted by a court of appeals unless clearly erroneous. United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 906 (1990). The sentencing court may consider any relevant information, regardless of whether it would be admissible under the Federal Rules of Evidence, so long as it has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; United States v. Silverman, 976 F.2d 1502, 1512 (6th Cir.1992) (en banc ), cert. denied, 507 U.S. 990 (1993). Although some courts and commentators have criticized the law in this area as unfair and perhaps unconstitutional,[8] it is clearly the controlling law.
 
 
 36
 Under Silverman, Murillo's argument fails. In this case, although he did not actually testify, Michael Cruz was in a local jail and, as the government told Murillo during the sentencing hearing, could easily have been called and cross examined by defense counsel at that hearing. J.A. at 554, 614-15. Finally, the F.B.I. had attempted to make an audio tape of Cruz's conversation with Murillo; most of the tape was inaudible, but it did indicate that there had been a conversation between the two men at the time Cruz had indicated. Id. at 563-54. The district court concluded that this was a sufficient indication of reliability for the purposes of sentencing. We hold that the district court's findings were not clearly erroneous.[9]
 
 VII. CONCLUSION
 
 37
 For the reasons discussed above, we affirm Murillo's convictions and sentence under 21 U.S.C. §§ 841(a)(1) and 846, but we vacate Murillo's conviction under 18 U.S.C. § 924(c)(1) and remand the case to the district court for resentencing. AFFIRMED in part, VACATED in part, and REMANDED.
 
 
 
 [1]
 Because the statement was Murillo's, and was offered against him, the testimony was not hearsay. FED.R.EVID. 801(d)(2)(A); Bondie v. Bic Corp., 947 F.2d 1531, 1534 (6th Cir.1991) ("a party's own statement offered against the party is, by definition, not hearsay")
 
 
 [2]
 FED.R.EVID. 404 states in relevant part:
 (a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion....
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 [3]
 Rule 404(b) usually demands a three-step analysis. In the case at bar, however, appellant does not argue that there was insufficient evidence that the bad act occurred. And, in light of our holding that the evidence was inadmissible, there is no need to balance the probativeness of the evidence against its prejudicial effect. Thus, only one of the three steps is relevant. See Comer, 1996 WL at * 4
 
 
 [4]
 The prosecutor's reference to "evidence from [Murillo's] own mouth" of not using guns apparently refers to defendant's plea of not guilty. There was no evidence at trial that Murillo had ever denied using guns. Murillo himself did not testify
 5 U.S.S.G. § 3C1.1 permits a two-level enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." Committing perjury is specifically listed as an example of obstruction of justice. U.S.S.G. § 3C1.1 commentary, Applic. Note 3(b).
 
 
 [6]
 Murillo's statement that the signature on the bottom of the Miranda waiver form was his could conceivably mean that he had signed the form without reading it. However, although the district judge must resolve any ambiguity in allegedly perjurious statements so as to prevent a finding of perjury, he need not accept incredible explanations for inconsistent testimony. In any case, even if this statement was not intentionally false, the other two false statements are more than sufficient to support the enhancement
 
 
 [7]
 The testimony regarding this statement is brief enough to set out here:
 [U.S. attorney]: Also did you have an occasion last week to reinterview Michael Cruz?
 [Officer Joe Johnson]: Yes.
 Q: Was that specifically in reference to his statement to you regarding a five kilogram reference having been made to him by Mr. Murillo?
 A: Yes.
 Q: And what did Mr. Cruz say with regard to that statement?
 A: That Mr. Murillo had stopped by his drive-in store in the summer of '93 and Mr. Murillo had told him he just gotten [sic] five kilos of cocaine in.
 I might add that there was an attempted taped conversation of that, which I have the tape and I turned it over to the defense but there's so much background noise you couldn't hear anything.
 But at the very end it does say this was Bob Murillo at 3:02 p.m. so it was some corroboration of Mr. Cruz's statement about that.
 J.A. at 563-64.
 
 
 [8]
 See, e.g., Silverman, 976 F.2d at 1519-31 (Merritt, C.J., dissenting); United States v. Miele, 989 F.2d 659, 663 n. 5 (3d Cir.1993) (citing commentators); Lauren Greenwald, Relevant Conduct and the Impact of the Preponderance Standard of Proof under the Federal Sentencing Guidelines: A Denial of Due Process, 18 Vt.L.Rev. 529 (1994) (arguing that the burden of proof for sentencing is unconstitutionally low); Elizabeth T. Lear, Is Conviction Irrelevant?, 40 U.C.L.A.L.Rev. 1179 (1993) (arguing against sentencing based on conduct which has never been the basis for a criminal conviction)
 
 
 [9]
 Because we uphold the reliance on Cruz's statement, we do not reach the government's contention that excluding the five kilograms would not affect Murillo's sentence