Buckley v. Commissioner, NH DOC          CV-97-353-B    07/17/98

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Gerald Buckley**</u>

    **v.**                                                                              C-97-353-B

<u>**Nicholas Pishon[1], Acting Commissioner,**</u>
<u>**New Hampshire Department of**</u>
<u>**Corrections**</u>


<u>MEMORANDUM AND ORDER</u>

Gerald Buckley was tried and convicted in June 1990 of kidnapping, aggravated felonious sexual assault, and misdemeanor sexual assault.  After unsuccessfully challenging his conviction both on direct appeal and through a state habeas corpus proceeding, Buckley filed this petition for a writ of habeas corpus pursuant to 28 U.S.C.A. § 2254 (West 1994 & Supp. 1998). Buckley contends that: (1) the trial court violated his Sixth Amendment right to confront witnesses by preventing him from eliciting certain testimony during his cross-examination of key prosecution witnesses; (2) the prosecution violated his Fourteenth Amendment right to due process of law by using false evidence to obtain his conviction; and (3) the State violated the Fifth Amendment's Double Jeopardy Clause by retrying him on the

---

[1]  The petition originally was directed against Paul Brodeur, Commissioner of Corrections.  Since it was filed, however, Commissioner Brodeur has been replaced by Acting Commissioner Nicholas Pishon, who is the proper party at this time.

1

same charge after his original trial ended in a mistrial.  In response, the Commissioner has moved for summary judgment.

For the reasons that follow, I grant the Commissioner's motion.

## I.  BACKGROUND

At approximately 2:30 a.m. on December 13, 1988, nineteen-year-old Deanna Walls was attacked in the parking lot adjacent to the apartment building where she lived with her mother.  Walls had just parked her car and was beginning to get out of the vehicle when her assailant approached her and grabbed her around the neck.  Putting his hand over her eyes, the assailant shoved Walls into the passenger seat of her car.  He put a knife against her face and began to sexually assault her.  The assault lasted for nearly three hours.

At one point, in an attempt to distract her attacker, Walls tried to engage him in conversation.  She told him that she was studying business administration at Mount Wachusett Community College.  He responded by telling her that he had attended the same college and owned three businesses.  Eventually, the attacker left the car after forcing Walls to perform oral sex.  Thereupon, Walls went into her apartment and told her mother what had happened.  Her mother notified the police.

With Walls's assistance, the police gathered evidence that led to the State's decision to prosecute Buckley. Immediately after the attack, Walls met with the police to help them make a composite drawing of the attacker. Several months later, as part of the investigation, Walls made phone calls to six answering machines and identified Buckley's voice on one of the recordings. She subsequently picked him out of a photographic line-up. In addition, the police discovered that on December 13, 1988, Buckley had made an early morning call from his car phone and that he had attended Mount Wachusett Community College and owned three businesses.

Shortly after Buckley's trial commenced, the prosecution discovered that the police had found fingerprint evidence on Walls's car but, because of a miscommunication, had never sent the fingerprints to the state crime lab. The prosecution immediately sent the prints to the lab which determined that they matched Buckley's. The trial judge then held an evidentiary hearing and determined that the fingerprint evidence was admissible. Because the defense had not known about the prints before the trial, however, the judge granted the defense's motion for a mistrial.

At the second trial, the court granted the prosecution's motion in limine to preclude all mention of the first trial. The defense had planned to refer to the first trial when cross-examining the police witnesses in an effort to show that the police had a motive to fabricate the fingerprint evidence.

3

Specifically, the defense planned to elicit admissions from the police witnesses that they had believed the first trial was progressing badly for the prosecution and, thus, that they had fabricated the fingerprint evidence (using fingerprints taken from a prior burglary investigation at Buckley's house) to strengthen the prosecution's case. The defense proceeded with its fabrication defense notwithstanding the court's order. Nevertheless, the jury rejected Buckley's defense and found him guilty.

Buckley appealed the trial court's ruling that limited his ability to cross-examine the police witnesses regarding the first trial. Upon review, the New Hampshire Supreme Court summarily affirmed Buckley's conviction. Buckley then filed a petition for a writ of habeas corpus in state court alleging that: (1) the police had fabricated the fingerprint evidence in violation of his right to due process of law; and (2) the State violated the Double Jeopardy Clause by subjecting him to a second trial on the same charge. After holding a hearing, the state court denied the petition. On appeal, the New Hampshire Supreme Court declined to review the case. Thereupon, Buckley filed the instant petition.

## II.  STANDARD OF REVIEW

The standards of review that apply to habeas corpus claims arising from state court judgments are described in 28 U.S.C.A. § 2254(d) and (e).  When a habeas corpus claim has been adjudicated on the merits in state court, the state court's legal determinations must stand unless they are "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C.A. § 2254 (d)(1).  The First Circuit recently held that in making such an assessment, a "federal habeas court . . . must undertake an independent two-step analysis."  O'Brien v. Dubois, No. 97-1979, 1998 WL 257206, at *7 (1st Cir. May 26, 1998) (citing James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 30.2c (Supp. 1997)).

The habeas court must first determine whether the Supreme Court has "prescribed a rule that governs the petitioner's claim."  O'Brien, 1998 WL 257206, at *7.  If so, the habeas court exercises plenary review of the state court decision to "gauge[] whether the state court decision is 'contrary to' the [relevant Supreme Court] rule," O'Brien, 1998 WL 257206, at *7.

In the absence of a governing Supreme Court rule, the habeas court takes the second step, assessing whether the state court decision reflects an unreasonable application of the Supreme Court's peripherally relevant jurisprudence.  Id. at *7, 9; Liebman & Hertz, supra, § 30.2c, at 310-11.  Where the state court decision expressly sets forth the rule that the court

5

crafted from relevant Supreme Court precedent for use in deciding the case under review, the habeas court must let the decision stand unless either the articulated rule is based on an unreasonable interpretation of Supreme Court precedent or the state court reached an unreasonable outcome in applying the rule to the facts of the case. O'Brien, 1998 WL 257206, at *7, 9-11; Liebman & Hertz, supra, § 30.2c, at 310-11 (When there is no clear Supreme Court precedent, "section 2254(d)(1) . . . validates reasonable, good faith interpretations of existing precedents." (internal quotations omitted)). Finally, where the state court decision does not expressly articulate the rule that the court crafted from relevant Supreme Court precedent for use in deciding the case under review, the habeas court must determine whether the outcome reached by the state court is reasonably consistent with what relevant Supreme Court precedent would demand based on the record of the case. See O'Brien, 1998 WL 257206, at *9, 11 (for state court decision to be reasonable, decision must be adequately supported by record); Liebman & Hertz, supra, § 30.2c, at 313 (section 2254(d)(1) provides for habeas court review of all state court decisions whether addressing questions of law or mixed questions of law and fact). The petitioner bears the burden of proving that the state court decision is contrary to the governing Supreme Court rule or that it reflects an unreasonable application of relevant Supreme Court precedent. See O'Brien, 1998 WL 257206, at *8, 9.

The state court's factual findings must be adopted unless

6

they are "unreasonable" "in light of the evidence presented in the State court proceeding[s]."  28 U.S.C.A. § 2254(d)(2). Factual findings are entitled to a presumption of correctness which cannot be overcome unless the petitioner can point to "clear and convincing evidence" to support his claim that the facts were incorrectly decided.  28 U.S.C.A. § 2254(e)(1).

I apply these standards in reviewing Buckley's habeas corpus claim.[2]

## III.  DISCUSSION

Buckley raises three claims in his petition.  First, he contends that the trial court violated his Sixth Amendment right to confront witnesses by preventing him from eliciting certain testimony during his cross-examination of key prosecution witnesses.  Second, Buckley argues that the prosecution violated his Fourteenth Amendment right to due process of law by using false evidence to obtain his conviction.  Third, he asserts that the State violated the Fifth Amendment's Double Jeopardy Clause by retrying him on the same charge after his original trial ended

---

[2]  The fact that the matter is before me on a motion for summary judgment does not affect my analysis.  I have already determined that Buckley is not entitled to an evidentiary hearing to supplement the state court record.  See note 3, infra. Moreover, the content of the trial and hearing transcripts and the state court orders on which my ruling is based are not in dispute.  Respondent is entitled to judgment as a matter of law even when the record is construed in the light most favorable to petitioner.

in a mistrial.  I examine each contention in turn.[3]

## A.    **Confrontation Clause Claim**

Buckley claims that the trial court violated his Sixth Amendment right to confront witnesses by preventing him at his second trial from cross-examining the police witnesses regarding his first trial.

There is "no rule in the [Supreme] Court's Confrontation Clause jurisprudence that governs . . . petitioner's claim of error." O'Brien, 1998 WL 257206, at *10.  "None of the Court's pronouncements flesh out its very general treatment of cross-examination rights, either by way of a more refined rule specifically intended for application to variant factual contexts or by way of a fact-specific rule that governs" the type of question at issue here.  Id.  Consequently, to prevail on his claim, Buckley must show that the trial court's limitation of his ability to cross-examine the police witnesses reflects an unreasonable application of the Supreme Court's peripherally relevant jurisprudence.  See 28 U.S.C.A. § 2254(d)(1); O'Brien, 1998 WL 257206, at *7, 9.  Because the court did not expressly

---

[3]  Buckley also contends that he did not receive a full and fair opportunity to adjudicate his fabrication-of-evidence claim in state court.  Thus, earlier in this litigation, he requested that I hold an evidentiary hearing with respect to that claim. Buckley's entitlement to an evidentiary hearing is governed by 28 U.S.C.A. § 2254(e)(2).  Under this provision, a habeas corpus petitioner generally will not be entitled to an evidentiary hearing on the ground that he failed to develop the factual basis of his claim in state court.  Breard v. Greene, 118 S. Ct. 1352, 1355 (1998).  Buckley failed to articulate any unusual facts to support his request that would exempt it from the general rule. Accordingly, I denied his request for an evidentiary hearing.

articulate the rule that it crafted from relevant Supreme Court precedent for use in deciding the case, I review that court's decision to determine whether the outcome reached by the court is reasonably consistent with what relevant Supreme Court precedent would demand based on the record of the case. See O'Brien, 1998 WL 257206, at *9; Liebman & Hertz, supra, § 30.2c, at 310-11, 313.

The Sixth Amendment's Confrontation Clause, made applicable to the states through the Fourteenth Amendment, Pointer v. Texas, 380 U.S. 400, 406 (1965), guarantees a criminal defendant the right to confront the witnesses against him, Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986); United States v. Williams, 985 F.2d 634, 639 (1st Cir. 1993). "An essential component of this right is the defendant's prerogative to establish the biases, prejudices, or ulterior motives of these witnesses through cross-examination." Williams, 985 F.2d at 639 (citing Davis v. Alaska, 415 U.S. 308, 315-17 (1974)). Consequently, a trial court must permit sufficient cross-examination of a witness to enable the jury "to make a discriminating appraisal of the possible biases and motivations of the witness." Williams, 985 F.2d at 639 (internal quotations omitted).

The Confrontation Clause, however, guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Van Arsdall, 475 U.S. at 679. Thus, the trial court has broad discretion to impose reasonable

9

limits on the extent of cross-examination, including limits to avoid inquiry into "marginally relevant" issues. <u>Van Arsdall</u>, 475 U.S. at 679; <u>Williams</u>, 985 F.2d at 639. "If the jury has sufficient evidence before it bearing on the witness's bias, the court need not permit unending excursions into each and every matter touching upon veracity." <u>Williams</u>, 985 F.2d at 639 (internal alterations omitted). The court need only allow the defendant "ample opportunity" to undermine the witness's credibility "by probing her bias and motive for testifying." <u>Id.</u> Thus, in determining whether the outcome reached by the trial court is reasonably consistent with what relevant Supreme Court precedent would demand, I review the record of the case to assess whether the court allowed Buckley ample opportunity to undermine the credibility of the police witnesses.

In conducting such a review of the record, I find that Buckley had ample opportunity to present the jury with evidence it could use in assessing whether the police had a motive to fabricate the fingerprint evidence. For instance, Buckley attempted to undercut the strength of the fingerprint evidence by cross-examining the police officers about their strong desire to convict him on the basis of their belief that he was the assailant. Further, defense counsel elicited testimony from the officers that prior to the fingerprint analysis, the case against Buckley was weaker. Cross-examination of the officers revealed that both the prosecution and the police believed Buckley may have been acquitted had the fingerprint evidence not come to

10

light.

Finally, Buckley was given considerable latitude in attempting to demonstrate on cross-examination that the fingerprint evidence was unreliable. Toward this end, defense counsel was able to establish that: (1) Peter Bouchard, the police officer who took the fingerprints from Walls's car, stated shortly after examining the car that he had not found any viable prints; (2) there were discrepancies in the descriptions of the equipment used to take the prints; and (3) there were possible breaches of the protocol used in the collection and reporting of the fingerprint evidence.

Thus, I find that despite preventing Buckley from referencing the first trial during the second, the trial court provided him with ample opportunity to present the jury with evidence bearing on the police witnesses' credibility. See Williams, 985 F.2d at 639. Consequently, I hold that the outcome reached by the court -- i.e., its denial of Buckley's request to reference the first trial during the second -- is reasonably consistent with what relevant Supreme Court precedent would demand.

B. **Due Process Clause Claim**

Buckley next argues that the prosecution violated his Fourteenth Amendment right to due process of law by using false fingerprint evidence to obtain his conviction.

"[A] conviction obtained through [the] use of false evidence . . . must fall under the Fourteenth Amendment." Napue v.

11

Illinois, 360 U.S. 264, 269 (1959); accord Carter v. Johnson, 110 F.3d 1098, 1104 (5th Cir.), judgment vacated on other grounds by 118 S. Ct. 409 (1997). To establish a due process violation, a habeas corpus petitioner must establish that: (1) the evidence offered by the State was actually false; (2) the prosecution knew it was false; and (3) the evidence was material to the petitioner's conviction. Carter, 110 F.3d at 1104. Because Buckley cannot establish either that the fingerprint evidence was false or that the state knew it was false, I reject his due process claim.

In the instant case, the state habeas court found that the fingerprint evidence was not false and, even if it were, the prosecution did not know it was false and/or did not intend to introduce false evidence at trial. A state trial or habeas court's determinations regarding whether putatively false evidence is actually false and whether the prosecution knew it was false are factual findings entitled to a presumption of correctness by a reviewing federal court. Id. Thus, Buckley can only prevail on his false-evidence claim if he can establish that the contested findings are unreasonable in light of the evidence presented in the prior state court proceedings. See 28 U.S.C.A. § 2254(d)(2); Carter, 110 F.3d at 1104. Petitioner must meet his burden by pointing to clear and convincing evidence. See 28 U.S.C.A. § 2254(e)(1); see also Colorado v. New Mexico, 467 U.S. 310, 316 (1984) ("Clear and convincing evidence" means evidence that could place in a fact finder "an abiding

12

conviction" that the truth of a party's factual contentions is "highly probable.").

Buckley's argument that the fingerprint evidence used against him at trial was false and that the State knew about it rests solely on his contention that there is a discrepancy between the appearance of the fingerprint powder that was used to lift the fingerprint evidence and the powder he claims was used on Walls's car. Whereas the powder used to lift the fingerprint evidence contained relatively few, and mainly small, metallic flakes, the powder Buckley asserts was used on Walls's car contained many metallic flakes of all sizes. Buckley further reasons that if such a discrepancy exists, the police must have known at the time of trial that the fingerprint evidence was false. Buckley, however, has failed to identify sufficient evidence supporting his position to rebut the presumption of correctness accorded the state habeas court's contrary conclusion.

Buckley's false evidence claim suffers from several fatal flaws. First, he could not establish that the fingerprint powder that was used at the crime scene came from the same source as the powder on which he bases his comparisons. Specifically, the habeas court reasonably found from the evidence that Buckley never established that: (1) the chain of custody for the tin of fingerprint powder purportedly used at the crime scene remained unbroken between December 1988 and 1996 when the powder in the tin was analyzed; or (2) that the powder contained in the tin

13

remained in the same condition until it was analyzed in 1996. Consequently, as the state habeas court supportably found, it is not at all certain that the 1996 tin is the same tin used at the crime scene or that it contains the same powder.

Even if petitioner had established the chain of custody for the 1996 tin and the integrity of its contents, he never countered the Commissioner's evidence explaining the discrepancy between the appearance of the powder used to take the fingerprint evidence and the appearance of the powder purportedly used on Walls's car. The Commissioner has offered three pieces of evidence that the state habeas court accepted as providing a reasonable explanation of the discrepancy.

First, at the evidentiary hearing held before the state habeas court, Morris Boudreau, a criminalist with the New Hampshire State Police Forensic Laboratory, testified that "brush contamination" could have caused the discrepancy. Boudreau stated that if a brush previously dipped in a gray powder were subsequently dipped in the 1996 tin's powder, then a composite powder with relatively few, and mainly small, flakes -- resembling the powder used to take the fingerprint evidence at issue here -- would result. Boudreau's opinion is supported by the testimony of Bouchard, the police officer who took the fingerprints. Bouchard testified that he does not use a new brush every time he uses a different type of powder and, in fact, routinely combines different types of powders to obtain the most effective mix.

14

Second, according to Boudreau, contaminants on the surfaces from which the fingerprints were taken could have caused the discrepancy between the appearance of the fingerprint evidence powder and that of the 1996 tin powder. Boudreau testified that surface contaminants can change the color and characteristics of the powder that adheres to a fingerprint.

Third, Boudreau explained that the technique of powder application in combination with the orientation of the surface on which the powder was applied could have caused the discrepancy. When a vertical surface is dusted for fingerprints, a technician will frequently start from the top of the surface and work downwards. In doing so, many of the metallic flakes within the powder may stick to the top of the sample surface. Thus, if a fingerprint is taken from the bottom of the sample surface, the fingerprint may contain relatively few metallic flakes. Bouchard's testimony bolstered Boudreau's in that Bouchard stated he routinely applies fingerprint powder to a vertical surface in just the manner Boudreau described.

Because of the strength of the evidence countering Buckley's arguments that the fingerprint evidence was false and that the police knew about it, I am not persuaded that his contentions are "highly probable" so as to meet the clear and convincing evidence standard demanded by 28 U.S.C.A. § 2254(e)(1). Thus, I hold that petitioner has not established that the contested findings are unreasonable in light of the evidence presented in the prior state court proceedings. See 28 U.S.C.A. § 2254(d)(2); Carter,

15

110 F.3d at 1104.

## C. **<u>Double Jeopardy Clause Claim</u>**

Finally, Buckley asserts that the State violated the Fifth Amendment's Double Jeopardy Clause by retrying him on the same charge after his original trial ended in a mistrial.

The Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, <u>Oregon v. Kennedy</u>, 456 U.S. 667, 671 n.3 (1982) (citing <u>Benton v. Maryland</u>, 395 U.S. 784, 794 (1969)), prohibits subjecting a criminal defendant to repeated prosecutions for the same offense, <u>Kennedy</u>, 456 U.S. at 671; <u>United States v. Morris</u>, 99 F.3d 476, 478 (1st Cir. 1996). The Clause, however, does not mandate that a state must always prosecute the defendant in a single proceeding. <u>Kennedy</u>, 456 U.S. at 672. For instance, a defendant's motion for a mistrial, even if necessitated by prosecutorial or judicial error, usually removes all barriers to reprosecution on the same charge. <u>See</u> <u>id.</u> at 672-73; <u>United States v. Cartagena-Carrasquillo</u>, 70 F.3d 706, 714-15 (1st Cir. 1995).

The narrow exception to this rule bars retrial where the defendant establishes that the prosecution or trial court intended through their behavior to provoke the defendant into moving for a mistrial. <u>Kennedy</u>, 456 U.S. at 675-76, 678-79; <u>accord</u> <u>United States v. Huang</u>, 960 F.2d 1128, 1133 (2d Cir. 1992) (finding that a showing even of gross negligence on the part of the prosecution or trial court is insufficient to invoke the exception). "The fact that the government blunders at trial and

16

the blunder precipitates a successful motion for a mistrial does not bar a retrial. . . . The only relevant intent is intent to terminate the trial, not [even] intent to prevail at . . . trial by impermissible means." United States v. Oseni, 996 F.2d 186, 188 (7th Cir. 1993).

In the case at hand, the state habeas court found that neither the prosecution nor the trial court intended through their actions to provoke Buckley into moving for a mistrial. A state court's determination regarding whether the prosecution or trial court intended to provoke a mistrial is a factual finding, Kennedy, 456 U.S. at 675, entitled to a presumption of correctness by a reviewing federal court, 28 U.S.C.A. § 2254(e)(1). Thus, Buckley can only prevail on his double jeopardy claim if he can establish by clear and convincing evidence, see id.; see also Colorado, 467 U.S. at 316, that the contested finding is unreasonable in light of the evidence presented in the prior state court proceedings, see 28 U.S.C.A. § 2254(d)(2).

Buckley contends that the prosecution's delay in introducing the fingerprint evidence and the trial court's ruling that the evidence was admissible were calculated to goad him into moving for a mistrial. Buckley, however, has not pointed to any evidence to support this contention. To the contrary, most of the evidence cuts against his argument. The state habeas court affirmed the original trial court's finding (arrived at after weighing the credibility of the officers involved in the mix-up) that the untimely disclosure of the fingerprint evidence was not

17

the result of bad faith on the part of the police or the prosecution but, rather, had been caused by a police miscommunication. Similarly, the state habeas court found that the trial court had not intended to goad Buckley into moving for a mistrial. As the state habeas court pointed out, the trial court's initial preference was to grant Buckley a continuance to evaluate the new evidence and prepare an appropriate defense; "Buckley's response to the situation[, i.e., requesting a mistrial,] was a product of his own free will."

Because of the strength of the evidence countering Buckley's assertion that the prosecution and/or the trial court provoked him into moving for a mistrial, I am not persuaded that his contention is "highly probable" so as to meet the clear and convincing evidence standard demanded by 28 U.S.C.A. § 2254 (e)(1). Thus, I hold that petitioner has not established that the contested findings are unreasonable in light of the evidence presented in the prior state court proceedings. See 28 U.S.C.A. § 2254(d)(2).

## IV. CONCLUSION

For the foregoing reasons, I grant the Commissioner's motion for summary judgment (document no. 21). All other pending motions, including Buckley's motion to strike respondent's

18

objection to petitioner's request for findings of fact and rulings of law (document no. 33), are dismissed as moot.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

July 17, 1998

cc:  Gerald Buckley, pro se
     Cynthia White, Esq.