# United States Court of Appeals
## For the First Circuit

No. 03-1686

UNITED STATES OF AMERICA,

Appellant,

v.

GARY P. DECICCO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Edward F. Harrington, U.S. District Judge]

Before

Torruella, Circuit Judge,
Lourie,[*] Circuit Judge,
and Howard, Circuit Judge.

Robert E. Richardson, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellant.
Kimberly Homan, with whom Joseph S. Oteri and Oteri & Lawson, P.C., were on brief, for appellee.

June 7, 2004

[*]  Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**. The government appeals from a pair of orders excluding evidence in the prosecution of Gary P. DeCicco ("DeCicco"). The government indicted DeCicco for four counts of violating 18 U.S.C. § 1341 and two counts of violating 18 U.S.C. §§ 844(h)(1) and (2). The district court excluded evidence related to prior bad acts by DeCicco. After careful review, we reverse.

## I.  Factual Background

DeCicco purchased a two-story brick warehouse located at 17 Rear Heard Street, in Chelsea, Massachusetts, on August 8, 1989 ("the Heard Street warehouse"). Before securing the mortgage on the Heard Street warehouse, DeCicco applied to the City of Chelsea for an occupancy permit to use the building as a warehouse for his moving companies. The city denied the application, noting that the Heard Street warehouse was surrounded by residential properties and had a narrow driveway to provide access to and from the street. DeCicco used the building as a warehouse, notwithstanding the City of Chelsea's opposition. In the ensuing dispute, the City of Chelsea prevented DeCicco from using the property as a warehouse.

After the permit was denied, DeCicco paid $65,000 for the Heard Street warehouse. The purchase was financed with a $104,000 loan from Somerset Bank, which was secured by a mortgage on the property. As proof of insurance on the property, DeCicco submitted an insurance binder from the John M. Biggio Insurance Agency,

signed by Andrew Biggio, and covering the property for the first month that DeCicco owned it.[1]

DeCicco was in arrears on his mortgage to Somerset Bank by September 1991. Somerset Bank obtained a foreclosure order on the Heard Street warehouse. DeCicco had other outstanding obligations to Somerset Bank: a $400,000 loan used to build a new warehouse in Revere, Massachusetts ("the Revere warehouse") and a short-term $80,000 commercial loan. Liens were imposed on both the Heard Street warehouse and the Revere warehouse, as well as on other properties owned by DeCicco's businesses.

In October 1991, two years after purchase, DeCicco obtained insurance on the Heard Street warehouse. Two applications were completed by the broker: a standard form application and an "arson" application. An insurance binder was issued by Lincoln Insurance Company and an expert was retained to examine the property. The inspector never managed to speak with DeCicco, but he visited the property and determined that, contrary to DeCicco's representations that the property was occupied, the Heard Street warehouse was in fact empty. On March 3, 1992, Lincoln Insurance Company cancelled the policy on the Heard Street warehouse due to DeCicco's alleged misrepresentations. A notice advised DeCicco

---

[1] The validity of this binder was questionable since Andrew Biggio did not work for the John M. Biggio Insurance Company, and the record contains no other indication that the insurance binder was otherwise valid.

that the policy would be cancelled effective at 12:01 a.m. on March 13, 1992.

In the meantime, Somerset Bank informed DeCicco that he was behind on his payments and that foreclosure proceedings would follow unless the bank received the amount owed by March 2, 1992.

On March 11, 1992, a fire broke out at the Heard Street warehouse. Investigators of the Chelsea Fire Department determined that the fire was started intentionally; the arsonist used a liquid accelerator on the support pillars, in order to bring down the building as quickly as possible. Due to the Fire Department's quick response, little damage was done to the warehouse. DeCicco did not file a claim related to this fire and a period of three years and two months transpired during which the Heard Street warehouse went uninsured.

In the meantime, DeCicco hired Richard Stewart ("Stewart"), an accountant. Stewart was allegedly retained because DeCicco had significant tax liabilities and wanted to institute sound bookkeeping practices for his businesses. Regardless, it is undisputed that DeCicco owed more than one million dollars to the Internal Revenue Service ("IRS") and other monies to the Massachusetts Department of Revenue ("DOR").[2] DeCicco also owed

---

[2] In addition to his tax liabilities, DeCicco was also informed by Somerset Bank of its intention to foreclose on the Revere warehouse.

over $10,000 in real estate taxes to the City of Chelsea and an undisclosed amount to the City of Revere.

On May 7, 1995, Scottsdale Insurance Company ("Scottsdale") issued an insurance policy for the Heard Street warehouse, listing DeCicco as the beneficiary. DeCicco told the Scottsdale agent that the building was a new purchase, even though DeCicco had owned it for nearly six years. He also told the Scottsdale agent that there was no mortgage on the property. The policy was for a one-year term and provided coverage of up to $125,000.

On July 9, 1995, the Heard Street warehouse was intentionally set on fire by means of four separate fires started on the second floor. The Fire Department again responded quickly and the property was spared. DeCicco hired an insurance adjustor to assist him in filing an insurance claim, but that claim was never filed.

During the early morning hours of July 21, 1995, a third fire broke out in the Heard Street warehouse. Investigators determined that the fire was set with an accelerant poured at the base of the support columns. The third time proved to be the last. This time, a much larger fire injured several firefighters as well as some surrounding residential property. Per the City of Chelsea's order, the Heard Street warehouse was demolished because the damage was too extensive.

DeCicco obtained payments for the third fire from Scottsdale, for a total aggregate amount of $116,964.

The government alleges that, in violation of 18 U.S.C. § 1341, DeCicco transmitted false and fraudulent insurance claims for building loss insurance proceeds to Scottsdale. Four distinct acts of mail fraud are alleged.[3] In addition, DeCicco was charged with two counts of knowingly using fire to commit a felony, in violation of 18 U.S.C. §§ 844(h)(1) and 2.

DeCicco filed a motion in limine seeking the exclusion of the following evidence at trial: any testimony of Richard Stewart, the accountant; and any evidence related to any fires at the Heard Street warehouse or any other property which pre-dated July 9, 1995.[4] The district court orally granted the motion on the first day of trial. The government appeals from this ruling.

## II. Standard of Review

We review a district court's ruling to exclude evidence under Fed. R. Evid. 404 (b) for abuse of discretion. See United States v. Williams, 985 F.2d 634, 637 (1st Cir. 1993). "[A]n abuse

---

[3] Count One alleges a fraudulent mailing on October 17, 1995 (a Sworn Statement in Proof of Loss Form); Count Two alleges a fraudulent mailing on November 9, 1995 (a partial insurance settlement check from Scottsdale sent to DeCicco); Count Three alleges a fraudulent mailing February 19, 1996 (a Sworn Statement in Proof Of Loss Form); and Count Four alleges a fraudulent mailing on February 27, 1996 (a final insurance settlement check from Scottsdale sent to DeCicco).

[4] The district court also excluded evidence related to a fire at Revere warehouse, a ruling which is not on appeal.

of discretion occurs when a relevant factor deserving significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." United States v. Gilbert, 229 F.3d 15, 21 (1st Cir. 2000)(citing United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992)(internal quotation marks omitted)).

### III. Analysis

### A. Exclusion of Evidence Related to 1992 Fire

DeCicco sought to exclude evidence of the March 1992 fire from the government's case in chief. DeCicco argued, inter alia, that the fire was evidence of other crimes which should be excluded under Fed. R. Evid. 404(b), and that there was insufficient evidence that he committed the prior bad act.

Federal Rule of Evidence 404(b) provides that:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake . . . .

Therefore, mere propensity evidence is never admissible solely to show a character inclined towards unlawful behavior. The same evidence may be admissible, however, even if it may be construed as propensity evidence, if it is used to show any of the other elements set out in the rule. See United States v. Taylor,

284 F.3d 95, 101 (1st Cir. 2002)(stating that Rule 404(a) codified the general prohibition against bad acts evidence, but Rule 404(b) allows for the admission of evidence of prior bad acts to prove elements other than propensity); United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996). We review the admissibility of this type of evidence under a two-pronged test: first, a court must determine whether the evidence in question has any special relevance exclusive of defendant's character or propensity; and second, notwithstanding its special relevance, whether the evidence meets the standard set forth in Fed. R. Evid. 403.[5] See United States v. Sebaggala, 256 F.3d 59, 67 (1st Cir. 2001); Frankhauser, 80 F.3d at 648.

The government argues that evidence of the March 1992 fire is probative of a common plan or scheme to burn the Heard Street warehouse for the insurance proceeds, or, in the alternative, that it is probative of identity. Before delving into these arguments, we consider the threshold question whether the government has proffered enough evidence to show, by a

---

[5] In full, this Rule provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

preponderance of the evidence, that DeCicco committed the March 1992 fire.

### 1.   <u>Sufficiency of the Evidence Argument</u>

Under <u>Huddleston</u> v. <u>United States</u>, 485 U.S. 681, 689 (1988), "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."  (citing <u>United States</u> v. <u>Beechum</u>, 582 F.2d 898, 912-13 (5th Cir. 1978)(en banc)).  In the instant case, DeCicco does not question the occurrence of the March 1992 fire but vigorously defends his innocence as to the arson.

The government proffered the following circumstantial evidence that DeCicco committed the 1992 arson:

> that 29 hours before he [knew] that the insurance on the building [was] going to be cancelled and at a time when he [was] under financial pressure both from the City of Chelsea, which [had] filed a tax title proceeding based on nonpayment of city taxes, and he's being chased by his bank for payment on the loan, there is a fire.

DeCicco's counsel stated that "[t]here was no evidence [as to the 1992 fire].  There's a lot of circumstantial stuff, but there's no evidence that ties the defendant to this fire, either that he did it, [or] that he hired anybody to do it.  There's no physical evidence."  The government attempted to develop its "common scheme or plan" theory by stating that

> the fact that three years goes by is actually significant because . . . the standard insurance form requires you to tell an

-9-

insurance company if you've had an insurance cancelled within the previous three years. Now a false answer on that will -- when it's discovered, which it almost surely will be -- is a basis for voiding the policy.

So after the fire in 1992 failed to work, three years goes by, and then the defendant insures the building again. Maybe six or seven weeks after he gets the insurance there's a second fire intentionally set in the building. That's one of the charged fires. That doesn't work.

Twelve days later there's a huge fire that finally takes the building down. So if you look at the time table . . . .

At this point in the discussion, the district court decided to exclude the evidence from the government's case in chief.

We find that circumstantial evidence was presented from which a jury could find by a preponderance of evidence that the 1992 arson occurred and that DeCicco was responsible. See Huddleston, 485 U.S. at 690 (stating that there must be enough evidence for a jury to reasonably conclude by a preponderance of the evidence that the prior bad act was committed). The jury can weigh the totality of the evidence to determine whether a preponderance of the evidence shows that DeCicco committed the first arson. See Huddleston, 485 U.S. at 690 (citing 21 C. Wright & K. Graham, Federal Practice and Procedure § 5054, p. 269 (1977)). The evidence adduced as to the timing of the 1992 fire and the fact that DeCicco was the sole beneficiary on the policy, as well as other evidence, such as the similar accelerant and method used, are

-10-

probative as to the 1992 fire. Therefore, we agree with the government that there is enough evidence for a jury to find that DeCicco started the 1992 fire.

## 2. **Special Relevance as to Common Scheme or Plan**

The district court abused its discretion when it refused to consider the government's argument as to the common scheme or plan in this case. As to the special relevance under Rule 404(b), the government argued to the district court, inter alia, that there was a common scheme or plan to burn the Heard Street warehouse for the insurance proceeds. "We have focused on two factors to determine the probative value of prior bad act evidence: 'the remoteness in time of the other act and the degree of resemblance to the crime charged.'" United States v. Varoudakis, 233 F.3d 113, 119 (1st Cir. 1996)(quoting Frankhauser, 80 F.3d at 648).

In this case, the first fire occurred three years prior to the two fires charged in the Indictment. In United States v. González-Sánchez, 825 F.2d 572, 581-83 (1st Cir. 1987), we affirmed the admissibility of other fires for the purpose of showing a common scheme to defraud using arson of property. In González-Sánchez, the fires occurred two months and six months before the final fire that destroyed the property. Id. at 577. Nevertheless, the distinction here (that three years elapsed) can be explained when viewed in the context of the cancellation of the Lincoln Insurance policy. DeCicco had to wait three years to obtain

-11-

insurance because any other policy provider would have reviewed prior cancellations, i.e., Scottsdale would have found out about the Lincoln Insurance policy cancellation and Scottsdale's insurance policy never would have issued. In addition, three years is not so remote a time as to reduce the probative value of this evidence. See Frankhauser, 80 F.3d at 649 (time span of seven years is not too remote); see also United States v. Hadfield, 918 F.2d 987, 994 (1st Cir. 1990)(five years between prior bad act and charged act is acceptable).

The degree of resemblance of the crimes also favors inclusion of the evidence. Both the 1992 fire and the final fire were set in the same manner: an accelerant was poured on the base of the support pillars on the first floor of the Heard Street warehouse. They are the same type of crime, and, more importantly, the object of all fires was the same property. These factors tend to show that the previous offense leads in progression to the two charged fires, or, put more simply, that DeCicco had one common scheme to burn the Heard Street warehouse, which had previously proven financially unsuccessful. Cf. United States v. Lynn, 856 F.2d 430, 435 (1st Cir. 1988)(reversing the admission of prior bad act evidence under the common scheme or plan theory, because the prior bad act did not lead in progression to the second act). Therefore, the district court erred in not considering whether the 1992 fire was relevant to a common scheme or plan to burn the Heard

-12-

Street warehouse for the insurance proceeds.  The evidence is probative of a common scheme or plan and should be introduced to that effect.

### 3.  **Rule 403 Analysis**

The second bar to the admission of prior bad acts evidence is Rule 403.  See Varoudakis, 233 F.3d at 121 (stating that a district court must exclude 404(b) evidence where its probative value is outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury or other considerations); see also Gilbert, 229 F.3d at 22.  The district court did not make a finding in this respect.  We find that, while this evidence is prejudicial, it does not violate Rule 403.  "[T]here is always some danger that the jury will use [Rule 404(b) other act] evidence not on the narrow point for which it is offered but rather to infer that a defendant has a propensity towards criminal behavior." United States v. Trenkler, 61 F.3d 45, 56 (1st Cir. 1995).  The risk here is not too great as to surpass the probative value of evidence, which, if found credible by a properly instructed jury, would show that the defendant had a common plan to burn the Heard Street Warehouse.  Cf.  Gilbert, 229 F.3d at 25 (affirming the exclusion of evidence under Rule 403, in a murder case, that defendant attempted to murder her husband because it was particularly inflammatory and highly susceptible of being misused by the jury).  Therefore, we find that the district court abused

-13-

its discretion and reverse the exclusion of the evidence regarding the 1992 fire.

**B. <u>Exclusion of Accountant's Testimony</u>**

DeCicco argued to the district court that the testimony of Stewart was not admissible to show motive or intent under Fed. R. Evid. 404(b), and was otherwise unduly prejudicial under Fed. R. Evid. 403. The government argues that this evidence was limited to Stewart's testimony regarding the calculation of individual taxes DeCicco owed as of the time of the July 1995 fires (including penalties and interest), the tax years for which those determinations were made, and other information regarding DeCicco's tax liabilities at the time of the July 1995 Heard Street warehouse fires, and that this testimony was relevant to the issue of motive to commit arson and the other crimes charged in the Indictment.

When the government attempted to introduce Stewart's testimony, the district judge asked the prosecutor if DeCicco was charged with any crimes related to his tax obligations. The district court stated that it was reluctant to "put in evidence of a crime when [DeCicco]'s not charged with it." Subsequently, the prosecution clarified that any evidence of tax liability would be introduced not to show that DeCicco was criminally liable for a tax crime, but merely for the proposition that he hired an accountant and that accountant determined DeCicco's outstanding tax liability to be a substantial sum. The tax liability was to be introduced as

-14-

relevant to motive -- that DeCicco sought to burn the Heard Street warehouse to obtain the insurance proceeds and defray his tax liability. The district court nevertheless excluded the testimony of Stewart from the government's case in chief.

First, the district court's analysis should not have relied on the specific crime charged. Rule 404(b)'s purpose is to provide an exception to the common law rule barring evidence of prior bad acts. The rule is permissive in nature, and the district judge's restriction of tax liability evidence, as a rule, to cases where a defendant is charged with criminal acts under the tax code directly contravenes the permissive purpose of Rule 404(b). As such, it was an abuse of discretion because the district court improperly accorded one factor significant weight -- the relation between the prior bad act and the crime charged -- and inappropriately excluded other considerations. See Gilbert, 229 F.3d at 21.

Second, when the prior bad act evidence is analyzed under the 404(b) framework, it is clear that Stewart's testimony is relevant to DeCicco's purported motive for committing the charged mail fraud offenses. Mindful that, "[w]hen prior bad act evidence is offered to prove a motive for the crime, courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury," Varoudakis, 233 F.3d at 120 (citations and internal quotation marks omitted), we nevertheless

believe the district court abused its discretion, because the mail fraud counts charged in the Indictment allege that the object of DeCicco's mail fraud was to extract the insurance money from Scottsdale. There is no indication here that the tax liability suggests "propensity as a necessary link in the inferential chain." Id. (citing Frankhauser, 80 F.3d at 648)(internal quotations omitted). The government did not seek to establish that because DeCicco did not meet his tax obligations he is more likely to commit arson. The government did seek to establish the tax liabilities in order to show for what purpose the fraudulently obtained insurance proceeds were intended. Therefore, the motive of the charged mail fraud can be properly alleged to have been pecuniary gain, and therefore, the evidence was improperly excluded. See Sebaggala, 256 F.3d at 67-68 (affirming the admission of evidence under Rule 404(b) of stolen and altered travelers' check as probative of motive on the charged false statement counts). Stewart's testimony is especially relevant here because it tends to establish the motive for the alleged mail fraud and the arson.[6]

DeCicco argues that notwithstanding any special relevance, Stewart's testimony should be excluded under Rule 403.

---

[6] Both the government and DeCicco make much of the amount of the tax liabilities and the entities involved. However, it is not our province to determine the credibility of the motive put forth by the government, merely the admissibility of the evidence.

-16-

We disagree. While the district court did not make specific findings under Rule 403 in its oral decision, we are of the view that, when offered for the limited purpose of showing motive, and viewed in the context of the government's charges, any danger of unfair prejudice in this case is minimal. See <u>Varoudakis</u>, 233 F.3d at 122-23; <u>see also</u> <u>Frankhauser</u>, 80 F.3d at 648-49. Therefore, the district judge's exclusion of Stewart's testimony is reversed.

## IV. <u>Conclusion</u>

For the reasons stated above, we reverse and remand for further proceedings consistent with this opinion.

**<u>Reversed and remanded</u>**.