# United States Court of Appeals
## For the First Circuit

No. 05-1299

UNITED STATES OF AMERICA,

Appellee,

v.

KELLNUM LANDRAU-LÓPEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Selya, Lynch, and Howard, Circuit Judges.

Mark L. Stevens, with whom Law Office of Mark Stevens was on brief, for appellant.
Mariana E. Bauzá-Almonte, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Senior Appellate Attorney in Charge, were on brief, for appellee.

April 6, 2006

**HOWARD**, <u>Circuit Judge</u>.  In July 2003, Kellnum Landrau-López was a new employee of Ponce Air Service (PAS), a ground service provider at Luis Muñoz Marín International Airport (LMMIA) in Puerto Rico.  His duties included loading and unloading luggage for commercial flights.  Landrau obtained this job with the help of his neighbor and long-time friend, Pedro Villegas-López, who worked for PAS and who has admitted to smuggling drugs into the continental United States through flights departing from LMMIA.

Following a seizure of drugs from a commercial flight originating from LMMIA, the Drug Enforcement Administration (DEA) commenced an investigation of the ramp and baggage handling employees at the airport.  In July 2003, a DEA confidential informant infiltrated the smuggling ring.  Posing as a cocaine supplier, the informant brokered a deal with Melvin Poupart to smuggle 30 kilograms of what was actually "sham" cocaine onto a flight from LMMIA to Newark, New Jersey.  After Poupart offered the smuggling job to Landrau, Landrau informed Villegas about it. Villegas initially declined to participate, but offered to enroll the services of two other PAS employees who had previously helped him with drug shipments, Saulo Hernández and José Ramírez-Báez.

In the early morning hours of July 23, 2003, with DEA agents observing from a concealed location, Poupart and the informant hand delivered two large duffel bags containing 30 kilograms of sham cocaine to Landrau at his house.  Shortly

-2-

thereafter, Hernández arrived. Landrau loaded the two duffel bags into Hernández's car, and the two then proceeded to the airport. At the airport, Ramírez protested that the duffel bags were ill-suited for smuggling drugs because they would appear suspicious and their contents would be easily detectable by feeling the outside of the bags. Landrau, nevertheless, insisted that they continue as planned. Ramírez and Landrau loaded the two bags onto a baggage cart, placed some garbage and an empty suitcase on top, and then drove the cart out to the make-up area for a Continental Airlines flight to New Jersey. Ramírez removed the tags from two suitcases that had been checked-in for the flight and attached them to the duffel bags. After baggage handlers finished loading all the legitimate luggage into the plane, Landrau drove the cart to the plane and personally loaded the two duffel bags. The bags were seized in New Jersey later that day.

A federal grand jury subsequently indicted Landrau and four others, including Villegas and Hernández, for conspiracy to possess with intent to distribute five or more kilograms of cocaine. See 21 U.S.C. §§ 841(a), 846. Although Landrau's four co-defendants pleaded guilty, Landrau elected to plead not guilty. He contended at trial that he was unaware of the contents of the duffel bags. Villegas, Ramírez and Hernández, however, testified that Landrau was the primary person responsible for smuggling this particular shipment. A jury returned a guilty verdict and the

-3-

district court sentenced Landrau to 151 months in prison. Landrau challenges the conviction on two grounds.

Landrau first argues that the district court delivered an erroneous jury instruction that may have caused the jury impermissibly to shift the burden of proof to him in violation of his due process rights. The allegedly erroneous instruction was delivered during jury selection. Addressing a panel of 38 potential jurors, the court explained the process of jury selection and outlined the allegations contained in the indictment. The court then stated as follows:

> [In] this case, the defendant has plead [sic] not guilty to the charges contained in the indictment, and thereby has raised issues of fact that need to be tried by a jury, and that is why you are here this morning, we are going to select the jury and proceed to try the issues of fact in this case.

Landrau contends that this instruction, regarding the effect of his not-guilty plea, diminished the presumption of his innocence and impermissibly shifted or reduced the government's burden of proof at trial. According to Landrau, because a defendant is never required to "raise issues of fact," the court's instruction may have confused the jury as to the proper standard of proof required of the government. See Hill v. Maloney, 927 F.2d 646, 648 (1st Cir. 1990) (holding that the due process clause "requires that the prosecution bear the burden of proving every essential element of a crime beyond a reasonable doubt, and

-4-

evidentiary presumptions in a jury charge that have the effect of relieving the government of that burden are therefore unconstitutional").  Because Landrau did not raise this issue below, our review is for plain error.  See United States v. Bailey, 405 F.3d 102, 110 (1st Cir. 2005) (citing United States v. Olano, 507 U.S. 725, 732-36 (1993)).

The district court's introductory statement to the venire, while perhaps infelicitously phrased, was not erroneous. On its face, the statement accurately explained why the jurors had been assembled and did not suggest that Landrau bore the burden of raising an issue of fact.  It merely expressed a truism -- that, by pleading not guilty, Landrau had put the facts alleged in the indictment at issue, thus necessitating a jury trial to determine those facts.  See, e.g., United States v. Argentine, 814 F.2d 783, 788 (1st Cir. 1987) ("[T]he plea of not guilty places every issue in doubt, and not even undisputed fact may be removed from the jury's consideration, either by direction or by omission in the charge.") (internal quotation marks omitted).  Moreover, when read in the context of the court's entire introductory remarks, it is clear that the court did not suggest that Landrau bore any burden in proving his innocence.  At the outset of jury selection, the court noted that the indictment constituted allegations, not proof, and that at trial, "it is the government who has the burden of proving the defendant guilty beyond a reasonable doubt."  Finally,

any initial confusion potentially caused by the court's introductory remarks was undoubtedly cured by the court's subsequent instructions to the selected and sworn jury. See United States v. Nishnianidze, 342 F.3d 6, 16 (1st Cir. 2003) (no plain error where the district court's misstatement at the start of an instruction was clarified later in the instruction). Just before the commencement of the trial, and again before submitting the case to the jury for deliberation, the court properly instructed the jurors on the government's burden and repeatedly emphasized that Landrau was entitled to "rely entirely on the presumption of innocence."[1]

Landrau's second argument is that the district court abused its discretion by allowing testimony concerning certain prior bad acts that he had allegedly committed. Landrau argues that the government improperly presented this testimony to illustrate his bad character and his propensity to commit crimes. See Fed. R. Evid. 404(b) (barring the admission of evidence of other crimes, wrongs or acts in order to illustrate a person's character to suggest action in conformity therewith). The

---

[1]A cautionary note is in order. Although a statement that the assembled venire has been summoned to jury duty in part because of the defendant's plea of not guilty may be historically accurate, such a statement runs the risk of prejudicing reluctant jurors against the defendant. On this record we have no reason to believe, nor has Landrau argued, that such prejudice resulted, but we urge district courts to avoid ascribing the jurors' presence in court to the defendant's refusal to plead guilty.

government counters that the evidence was presented to rebut Landrau's defense -- that he did not know what was inside the duffel bags. See id. (providing that evidence of other crimes, wrongs or acts "may, however, be admissible for other purposes, such as proof of . . . intent, . . . knowledge, . . . or absence of mistake or accident"). We review the district court's admission of other acts evidence under Rule 404(b) for an abuse of discretion. See United States v. Williams, 985 F.2d 634, 637 (1st Cir. 1993).

Before trial, the government moved for leave to introduce testimony concerning Landrau's prior drug smuggling activities. Specifically, the government sought to elicit testimony from Villegas that Landrau: (1) ran a heroin drug point out of a public housing complex; (2) was involved in the sale and trafficking of marijuana; (3) was arrested for possession of an illegal firearm; (4) brought a suitcase full of cocaine on a flight from LMMIA to the continental United States; and (5) stored a stockpile of cocaine for Villegas. The district court barred testimony concerning the first three incidents, but, over Landrau's objection, allowed testimony concerning the latter two. Villegas subsequently testified that he had paid Landrau to bring a suitcase containing 36 kilograms of cocaine on a commercial flight from Puerto Rico to New York, and, on a separate occasion, had paid Landrau to store 100 kilograms of cocaine pending its smuggling

into the continental United States.[2]  Villegas additionally testified that he and Landrau had been next-door neighbors and friends for 15 years.

The admissibility of Rule 404(b) evidence is considered in two steps: "first, a court must determine whether the evidence in question has any special relevance exclusive of defendant's character or propensity; and second, notwithstanding its special relevance, whether the evidence meets the standard set forth in Fed. R. Evid. 403." United States v. Decicco, 370 F.3d 206, 211 (1st Cir. 2004).  In considering the "special relevance" of other bad act evidence, we have typically focused on two factors: "the remoteness in time of the other act and the degree of resemblance to the crime charged."  Id. at 212 (internal quotation omitted). Landrau does not contend that the prior crimes were too remote in time to have probative value, but instead focuses on the factual dissimilarities between the prior acts and the crime charged. Landrau contends that the crime charged concerns his efforts, through the use of his employment and his position of trust at PAS, to transport cocaine within the airport, whereas the prior acts testimony merely alleges his one-time participation as a "mule" --

_____

[2]Villegas also testified to one occasion after July 23, 2003, when Landrau helped move 10 kilograms of cocaine within LMMIA. Landrau does not challenge the admission of that testimony, and, even if he did, any such challenge would fail.

accompanying a shipment of cocaine from LMMIA to New York -- and that he once agreed to store some cocaine.

Because Landrau was charged with conspiracy to knowingly possess cocaine with the intent to distribute it, and because he defended by claiming ignorance of the cocaine, Landrau's reading of the Rule 404(b) exceptions is too restrictive. See United States v. Flores Perez, 849 F.2d 1, 4 (1st Cir. 1988) ("[W]here . . . the other bad act evidence is introduced to show knowledge, motive, or intent, the Rule 404(b) exceptions to the prohibition against character evidence have been construed broadly."). The other bad act need not be identical to the crime charged so long as it is sufficiently similar to allow a juror to draw a reasonable inference probative of knowledge or intent. See United States v. Spinosa, 982 F.2d 620, 628 (1st Cir. 1992) (holding that evidence of prior drug sales was "sufficiently similar to the crimes charged . . . to be probative of the fact that [the defendant] was not merely an innocent driver who was involved in the [drug] transaction by accident"); United States v. Nickens, 955 F.2d 112, 124-25 (1st Cir. 1992) (upholding, in a drug importation case, the district court's admission of a prior conviction for selling cocaine because it "was relevant to both [the defendant's] knowledge that there was cocaine in the suitcases and to his intent to distribute it"). Here, both of the alleged prior acts related to the smuggling of cocaine. In one instance, Villegas claimed to

have hired Landrau to smuggle cocaine onto a flight out of LMMIA, and in the other, Villegas claimed that Landrau stored a stockpile of cocaine which Villegas intended to ship later out of LMMIA. That testimony, especially when considered with Villegas's testimony that he and Landrau had a longstanding personal relationship, is probative of knowledge and intent, see United States v. Garcia, 983 F.2d 1160, 1173 (1st Cir. 1993) (prior drug crimes probative of knowledge and intent), and of the conspiratorial relationship between Landrau and Villegas, see United States v. Escobar-de Jesus, 187 F.3d 148, 169 (1st Cir. 1999) ("In a conspiracy case, evidence of other bad acts . . . can be admitted to explain the background, formation, and development of the illegal relationship, . . . and, more specifically, to help the jury understand the basis for the co-conspirators' relationship of mutual trust.") (citations omitted).

Landrau fares no better under Rule 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by," inter alia, "the danger of unfair prejudice." Fed. R. Evid. 403. Although there is always some danger that the jury will use other bad acts evidence to infer criminal propensity, such evidence should be excluded under Rule 403 only when its probative value is substantially outweighed by its potential unfairly to prejudice the defendant. See Decicco, 370 F.3d at 213. Here, where Landrau's knowledge of the contents

of the duffel bags was the critical factual issue in dispute, the testimony establishing his participation in prior drug smuggling activities was highly probative.  See Spinosa, 982 F.2d at 628 (upholding admission of prior bad act evidence because it "directly contradicts [the defendant's] defense that he was involved only by accident or mistake").  In sum, the district court did not abuse its discretion in admitting Villegas's testimony concerning Landrau's prior criminal behavior.

**Affirmed**.