# United States Court of Appeals
## For the First Circuit

No. 08-1539

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL WYATT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul Barbadoro, U.S. District Judge]

Before

Boudin, John R. Gibson,* and Howard,
Circuit Judges.

Susan E. Taylor for appellant.
Donald Feith, Assistant United States Attorney with whom
Thomas P Colantuono, United States Attorney, was on brief, for
appellee.

March 26, 2009

---

*Of the Eighth Circuit, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>.  Michael Wyatt (Wyatt) appeals his conviction of one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, claiming (1) that he was the recipient of ineffective assistance of counsel, (2) that the district judge improperly granted a motion in limine requesting admission of inappropriate character evidence, and (3) that there was insufficient evidence to support the jury's finding of intent and consequently, the district court erred in denying his motion for acquittal.  We affirm.

## I.  Background

Wyatt was, for a time, a residential loan officer, who eventually went into business as a broker for commercial and venture capital lending.[1]  Early 2003 proved to be a fateful time for Wyatt's new business venture.  Around that time, he met Virginia Moate (Moate), an escrow agent in New Jersey, as well as Larry Stallings and his son, Christopher Stallings (the Stallings), Wyatt's soon-to-be business partners and co-conspirators.  Acting on Wyatt's instructions, Moate opened an escrow account for Wyatt's new venture.

With these preparations laid, Wyatt was able to engage in the transactions that gave rise to the indictment.  These

---

[1]  Because these facts bear on Wyatt's sufficiency of the evidence claim, we relate the facts in the light most favorable to the jury's verdict.  <u>United States</u> v. <u>Cruz-Diaz</u>, 550 F.3d 169, 171 (1st Cir. 2008).  We will further augment our overview of the case, as necessary, in our discussion.

transactions involved seeking high-risk borrowers and offering to facilitate sizable loans, on the order of several million dollars. As part of these loans, Wyatt would insist on substantial initial payments, which would, at closing, be used to procure an "insurance binder" to protect the lender(s) against default. The loan documents made clear that these initial payments were to be held in escrow (in the account created by Moate) until closing. And should the transaction fail to close, these payments were to be fully refundable.

Wyatt pitched and negotiated three such transactions. One was with Beaconvision, a software development company located in Nashua, NH, in the amount of two million dollars, with advance fee payments totaling $200,000. The second was with InCiti Apparel, a clothing company, in the amount of one million dollars with an advance fee payment of $100,000. The third such transaction, with Market and Match, a Nevada entity specializing in fertilizer and municipal waste, was in the amount of two million dollars with advance fees of $200,000. The evidence showed, despite contrary promises to his clients, that Wyatt directed Moate to disburse the purportedly escrowed advance fee payments to himself and his co-conspirators, including the Stallings. All told, Wyatt directed that approximately $98,000 of the $500,000 total advance fee payments be disbursed to him. None of these loans ever closed, and no part of the advance fee payments --

including the portions that Wyatt ordered disbursed to himself --
were refunded to any of the victims.

After trial, the jury found the defendant guilty on the
sole count of conspiracy to commit wire fraud, and the district
court sentenced Wyatt to fifty months incarceration followed by
three years of supervised release. This appeal timely followed.

## II. Ineffective Assistance of Counsel

Wyatt's primary contention, made for the first time on
appeal, is that he received ineffective assistance of counsel at
trial. He notes that, in his opening statement, his trial counsel
repeatedly promised the jury that Wyatt would testify in his own
defense, but, when the time came, advised him not to testify.
Wyatt, acting on this advice, chose not to testify. He claims that
this turn of events cost him in the eyes of the jury. See Ouber v.
Guarino, 293 F.3d 19, 28 (1st Cir. 2002) (affirming decision
granting petition for writ of habeas corpus based on ineffective
assistance of counsel where in opening statement, defense counsel
promised jury that defendant would testify, counsel structured
entire defense around defendant's testimony, yet on advice of
counsel, defendant ultimately did not testify).

We have consistently maintained that ineffective
assistance of counsel claims should ordinarily be litigated in the
first instance in district court. United States v. Hicks, 531 F.3d
49, 55 (1st Cir.), cert denied, 129 S. Ct. 590 (2008) (citing

-4-

Massaro v. United States, 538 U.S. 500, 505 (2003)); United States v. Griffin, 524 F.3d 71, 75 n.1 (1st Cir. 2008).

It is true that we make an exception for cases in which trial counsel's ineffectiveness is manifestly apparent from the record, Hicks, 531 F.3d at 55, but this is not such a case. The record is devoid of trial counsel's response to Wyatt's claim of ineffectiveness, including the circumstances that prompted him to make the promise to the jury, as well as the motivation for, and substance of, his alleged advice to Wyatt regarding the possibility of Wyatt testifying. These are precisely the kinds of issues that should be ventilated in a trial court in the first instance. See Hicks, 531 F.3d at 56; United States v. Torres-Rosario, 447 F.3d 61, 64-65 (1st Cir. 2006). Consequently, Wyatt's claim for ineffective assistance of counsel cannot be sustained on direct appeal, and this claim instead must be remitted to a petition for collateral relief pursuant to 28 U.S.C. § 2255.

### III. Evidentiary Objection

Wyatt next takes issue with the district court's tentative decision to deny his motion in limine and tentative decision to permit the government to cross-examine Wyatt regarding a similar transaction to prove Wyatt's intent, knowledge, and absence of mistake pursuant to Federal Rule of Evidence 404(b).

Further background frames the tentative ruling more clearly. Well in advance of trial, Wyatt filed a motion to

"suppress" evidence regarding a similar transaction between himself and Pedro Diaz-Sanchez (Diaz-Sanchez), which did not involve the Stallings. The district court denied the motion without prejudice, and the government revived the controversy when it filed a motion in limine seeking to introduce the same evidence pursuant to Federal Rule of Evidence 404(b). The government, however, agreed not to introduce any such evidence in its case-in-chief, and apparently without objection from Wyatt, the district court took the government's motion under advisement.

At the close of the government's case-in-chief, Wyatt sought the district court's ruling on the government's motion in limine if he were to testify. At the court's request, the government proffered evidence suggesting that Wyatt engaged in a similar transaction with Diaz-Sanchez in which he received a fully refundable commitment fee of $25,000 to secure a loan of eight million dollars. Within days of receiving the fee, Wyatt withdrew $20,000 of the fee in cash, the loan never closed, and Wyatt never refunded the fee. The district court suggested that this evidence, despite some weaknesses,[2] was highly probative of Wyatt's intent.

Nevertheless, the district judge made clear that he had not made up his mind, and needed to hear additional information

---

[2] The government conceded that it could not prove direct conversations between Diaz-Sanchez and Wyatt, and it was unable to determine whether the intermediary through whom the loan was negotiated, a woman named Carmen, was associated with Wyatt's company, Weller Financial.

before reaching a conclusion. Consequently, he reserved judgment until after he heard Wyatt's testimony, and explicitly instructed the government to approach the bench before introducing the evidence so that he could confer with counsel, and confirm his tentative ruling. Ultimately, evidence of the Diaz-Sanchez transaction was never introduced.

Nonetheless, Wyatt claims that the court's tentative ruling prejudiced him because the court's tentative ruling dissuaded him from testifying. Further, Wyatt claims that the district court's tentative conclusion was erroneous because the evidence amounted to impermissible character evidence under Rule 404.

Although we have long required that evidence admitted pursuant to Rule 404(b) have "some special relevance" other than to prove that the defendant had a propensity to commit the crime in question, United States v. Jiminez, 507 F.3d 13, 17 (1st Cir. 2007), cert. denied, 128 S. Ct. 1321 (2008), this standard is not "particularly demanding." Id. Thus, a district court's decision under Rule 404(b) is accorded deference. United States v. Landrau-Lopez, 444 F.3d 19, 23 (1st Cir.), cert. denied, 549 U.S. 873 (2006) (citing United States v. Williams, 985 F.2d 634, 637 (1st Cir. 1993)).

In this case, the district court did not abuse its discretion by preliminarily ruling that evidence of the Diaz-

Sanchez transaction would be admissible to show Wyatt's intent, knowledge, and absence of mistake. Even though it was not identical to the transactions that Wyatt participated in with the Stallings, the Diaz-Sanchez transaction bore enough indicia of similarity that the District Court did not abuse its discretion when it concluded that evidence of the transaction would assist the jury in determining whether Wyatt was "duped" by the Stallings, or whether Wyatt fully understood the fraudulent nature of the charged transactions. Such a conclusion is in harmony with our understanding of Rule 404(b). Landrau-Lopez, 444 F.3d at 24 (citing United States v. Spinosa, 982 F.3d 620, 628 (1st Cir. 1992) (other bad act need not be identical to crime charged so long as it is sufficiently similar to permit juror to draw reasonable inference probative of knowledge or intent).[3]

## IV. Sufficiency of the Evidence

Wyatt concludes his appeal with a challenge to the sufficiency of the evidence. His sufficiency argument is limited to a claim that the district court erred in denying his motion for an acquittal pursuant to Federal Rule of Criminal Procedure 29

---

[3] In his brief, Wyatt claims that the district court's tentative decision was an improper balancing of the potential prejudice of the evidence against its potential probative value under Rule 403. Given our generally deferential review of a district court's balancing of prejudice, see United States v. Morales-Aldahondo, 524 F.3d 115, 119-120 (1st Cir.), cert. denied, 129 S. Ct. 512 (2008), this objection must fail for the same reasons as Wyatt's Rule 404(b) objection.

because there was insufficient evidence as to his intent. Where a defendant has moved for a judgment of acquittal on sufficiency grounds, our review is de novo. United States v. Cruz-Rodriquez, 541 F.3d 19, 26 (1st Cir. 2008), cert. denied, 129 S. Ct. 1017 (2009). Nevertheless, in assessing the sufficiency of the evidence, we examine the evidence -- direct and circumstantial -- as well as all plausible inferences drawn therefrom, in the light most favorable to the verdict, and determine whether a rational fact finder could conclude beyond a reasonable doubt that the defendant committed the charged crime. Id.

To sustain a conspiracy conviction, the government must adduce proof beyond a reasonable doubt (1) that an agreement existed to commit the particular crime; (2) that the defendant knew of the agreement; and (3) that he voluntarily participated in it. Id. In other words, the government must prove that the defendant joined and participated in the conspiracy with the knowledge of, and the intent to further, its unlawful objective. 1 Sand et al., Modern Federal Jury Instructions, Instruction 19-3S (2005). It is important to note, however, that such proof may consist of circumstantial evidence, such as acts committed by the defendant that further the conspiracy's purpose. Id.

On this standard, it is plain to us that a reasonable fact finder could conclude beyond a reasonable doubt that Wyatt possessed the requisite intent. Wyatt took several steps, the

facts of which are undisputed, that a reasonable fact finder could believe served to further the goals of the conspiracy. He made presentations to several counterparties to induce them to wire money for the scheme. He ordered the withdrawal of monies from an escrow account, and disbursement of the funds not only to the Stallings, but also to himself. Finally, Wyatt retained the roughly $100,000 that was disbursed to his own account and appears to have made no effort to return these funds when it became clear that the loans at issue would not close. From these facts, a rational fact finder could indeed conclude that Wyatt intended to agree with his co-conspirators to engage in a scheme to harvest loan advance fees from unsuspecting borrowers, and that Wyatt, who did not return any funds that were disbursed to him, intended to commit the underlying offense.

Wyatt does not dispute the character and nature of this evidence. Rather he argues, based on other evidence such as the testimony of Moate, that he believed the Stallings had the capacity and intent to engage in the lending transactions. Wyatt further argues that if sophisticated business owners could fall prey to the scam, so could he. Finally, Wyatt argues that his disassociation from the Stallings, while they were engaging in further transactions and well in advance of their arrest, is also indicative of his innocence.

Although the jury was free to credit this evidence if it so chose, we cannot conclude that a rational fact finder must credit the evidence Wyatt cites over the government's powerful evidence indicating intent:  namely, that Wyatt actively solicited victims, induced them to send him large amounts of money, which he, along with others, retained, and made no effort to disgorge.

As intent was the only element to which Wyatt has lodged a sufficiency objection, we cannot conclude that the jury reached a conclusion that the evidence would not support.

## V.  Conclusion

All of Wyatt's arguments having proven unavailing, his conviction is **affirmed** in all respects.

It is so ordered.